# HUGH MCELDERRY *vs.* JAMES SHIPLEY and others.

A court of chancery, upon proof of fraud, mistake or surprise, will raise an equity by which an agreement will be rectified according to the intent of the parties; it will not interfere where the instrument itself is such as the parties designed it to be. If they voluntarily choose to express themselves in the language of the deed, they must be bound by it.

Instead of an implied or resulting trust, or an equity by operation of law, the complainant in this case attempted to set up a conventional trust, on the foundation of a special parol agreement. This is contrary to the provision of the statute of frauds.

If the complainant designed to claim as assignee of the mortgage, his bill must present the claim in that aspect.

This is not a case which the court is authorised, by the act of 1832, ch. 302, to remand. The bill, as amended, would be so repugnant and inconsistent in its several parts, as perhaps to defeat the plaintiff's recovery altogether.

APPEAL from a decree of the court of chancery.

18th March 1843, the appellant filed his bill of complaint in the court of chancery, asking a sale of mortgaged premises,

for the payment of a claim which he had against Shipley, one of the appellees.

The bill charges, that about the 7th May 1841, James Shipley, through the ag .ncy of Thomas Lister, purchased of the complainant lumber, for erecting a house at Ellicotts Mills, in Howard district. Lister was Shipley's carpenter, and from time to time received the lumber, until the 3rd November 1841, when the account against Shipley amounted to $868.10, when Shipley agreed to mortgage, through Lister, to the complainant, the property included in the mortgage deed, to secure the payment of the debt then due, as well as such *other sums of money* as he might owe for lumber furnished for the house.

On the 9th November 1841, Shipley, by deed, assigned to Lister leasehold property in Howard district, which deed is made an exhibit, to be void on payment by Shipley to Lister of $1200, with interest from the date of the deed, on or before 9th November 1842. At the date of the deed, Shipley owed Lister nothing, but it was made to secure what was due, and might become due, to the complainant, for lumber furnished for the purpose aforesaid.

On the 2nd April 1842, complainant's bill amounted to $936.34, and Lister, with the knowledge and consent· of Shipley, mortgaged the property to complainant, to secure the amount of mortgagee's claim against Shipley. On the 3rd April 1842, the bill was $969.47.

On 23rd July 1841, Shipley passed to the complainant McLaughlin and Boteler's note, payable to and endorsed by Shipley for $100, as collateral security, but it has never been paid, and no part of the claim of complainant has ever been paid by any one.

The bill further charges, that on the 23rd September 1842, the sheriff of Howard district, having in his hands a *fi. fa.* against Shipley, levied upon this property and sold the same at public sale, to William H. Worthington, it being subject to an annual ground rent of $44, and Shipley in arrears therefor $932, for which the premises are liable.

It also charges, that Lister is fraudulently attempting to deprive the complainant of the benefit of his security, by denying that it was given upon those terms, and by claiming for himself all the advantages of it.

The deeds from Shipley to Lister, and from Lister to the complainant, and the account against Shipley, are made exhibits by the complainant.

Shipley, in his answer, admits all the allegations in the bill.

Lister says, that Shipley was indebted to him $500, and executed the mortgage to secure its payment; denies any understanding that the mortgage was for the complainant's benefit, and does not know why the mortgage should state an indebtedness of $1200. It also states, that after the deed was executed to him, he continued to do carpenter's work for Shipley, who, by payments at different times, had reduced the claim to $350, at the time the second deed was executed.

He made the assignment to complainant without any authority from Shipley, because he thought the complainant ought to be secured, and that the mortgage gave him authority to convey to any person he chose.

The lumber was purchased by Shipley himself, and not by the respondent. He further alleges, that the note of M. and B. was given to the complainant absolutely, and not as collateral security.

The answer of Worthington sets forth, that on 10th March 1840, Shipley, as collector of taxes, executed a bond to the State, with three securities, of which he was one, in the penal sum of $20,000. On the 8th September 1841, suit was instituted in the name of the State, for the use of the commissioners of Anne Arundel county, and on the 14th March 1842, judgment was rendered for $4673.69, and $20 costs, with interest from 20th October 1840. On this judgment *fi. fa.* was issued, and the mortgaged premises offered for sale 12th November 1842.

This answer also states, that in Howard district the administrator of Charles S. Worthington obtained judgment against Shipley 14th March 1842, for $568.47, with interest from

22nd December 1839. ·On this judgment a *fi. fa.* was issued 23rd September 1842, and on 12th November 1842, the mortgaged premises were sold in satisfaction of the judgment, and purchased by the respondent for $50.

The answer of W. also alleges, that on the first of the judgments he paid $500, J. G. Worthington $1000, both payments made 16th March 1843, and respondent is answerable for the balance of that judgment.

It is further set forth in this answer, that the mortgage from Shipley to Lister was not *bona fide;* that Shipley was then in insolvent circumstances, he knew that all the property he then had would not pay his debts, and the object of the mortgage was to secure debts that Shipley might afterwards owe to Lister, to the exclusion of previous debts to others. That the second mortgage was made after the judgments, with the consent or at the request of Shipley, and, in combination with complainant, fraudulently to prevent the plaintiffs in those judgments from realising their claims out of this property, and that Lister, before the assignment to complainant, had been paid nearly, if not quite all, his claim against Shipley.

That neither the plaintiffs in those judgments nor the defendants, as such, are made parties in this cause, and Shipley is substantially the complainant.

Anderson (the sheriff) denies any knowledge of the matters between complainants, Shipley and Lister; gives an account of the two *fi. fas.* in his hands. Sold the premises to appellee, Worthington, for $50, but has not returned the writ.

The complainant put in a general replication, and much testimony was taken.

The bill of the complainant was dismissed with costs, on the ground that the facts and circumstances did not warrant the relief prayed.

The case was argued before ECCLESTON, TUCK and MASON, J.

By *Reverdy Johnson, Jr.,* and *Reverdy Johnson, Sen.,* for the appellant, and *Tyson* and *Nelson* for the appellee,

*Johnson, Jr.* Worthington claims under a sheriff's sale; the party who sued out the *fi. fa.* has no interest in this controversy. Worthington himself is the only person who will be affected by the decree. 12 *G. & J.*, 1, *Lucas against McBlair.*

Even if the testimony in relation to the object of the two mortgages be inadmissible, and that these instruments are to be construed by their contents alone, yet as the mortgage to Lister was made in November 1841, and that of April 1842 assigned to complainant Lister's interest, and the judgments were not obtained until after the first mortgage, the title to the property vested in the complainant, before Worthington acquired any lien. See 2 *Powell on Mortgages*, 609, *(note c.)*

The judgments were not liens upon the personal estate. Even if Shipley was insolvent, how does that affect the case? Shipley never petitioned for the benefit of the insolvent law, and might prefer any *bona fide* creditor.

But the parol evidence is admissible under the circumstances of the case. It shows the intention of the parties at the time of the mortgage. 1 *Starkie Ev.*, secs. 28, 29, 31. 5 *H. & J.*, 86. 3 *G. & J.*, 188. 3 *H. & J.*, 410. Besides, there is a charge of fraud in the complainant's bill.

The declarations of Lister are a part of the *res gestæ*, and against his own interest, and defendants have made these declarations evidence by their own witness. 2 *H. & G.*, 87. 1 *H. & G.*, 252. *Roberts on Frauds*, 88, 89.

Under the circumstances of this case, parol evidence is admissible to show the character of the deeds. 4 *Kent*, 142. 2 *Story's Equity*, sec. 1018. *Eden's Ch'y Reports*, 110. 1 *Dessausure*, 340. 9 *Wend.*, 227. 21 *Wend.*, 36. 2 *Ala.*, 571. 3 *H. & J.*, 410. 6 *H. & J.*, 24. 6 *H. & J.*, 435. 2 *Sumner*, 228. 6 *Conn.*, 388. 4 *H. & J.*, 551. 3 *Dal.*, 506.

If the parol evidence be admissible, it clearly proves the case.

In consequence of the agreement between Lister and Shipley, at the time the deed to Lister was executed, the former became seized for the benefit of the appellant, and it would

be a downright fraud upon the appellant, not to give effect to that agreement. 1 *H. & J.*, 551. 1 *John. Ch. R.*, 582. 13 *John.*, 463. 3 *John. R.*, 216. 6 *Paige*, 355. 1 *John. Ch.*, 394. 8 *Cond. Eng. Ch. R.*, 245. 3 *Peters*, 219. 5 *Gill*, 138.

*Tyson.* Shipley was the collector of the public taxes, and had very little property. Worthington became one of his securities.

No fraud is charged in the bill, except that with which Lister is charged.

The plaintiff in the suits at law, are not made parties to this bill.

1825, chap. 50, the case, 1 *Gill*, 424, relates to this act.

The mortgage from Shipley to Lister, if it be of any validity, is a mortgage to Lister only, as it appears on its face. To make it a mortgage for the benefit of complainant, would be in violation of the act of 1825, ch. 50.

If the first deed be insufficient, so as of itself to give the complainant an interest, that insufficiency is not cured by the second. It is contended, that the complainant, by accepting the latter, waived all right, which he might otherwise have claimed under the former. The mortgage by Lister to the complainant clearly establishes, that the first is a mortgage exclusively to Lister, and estops complainant from alleging it to be for his benefit.

If the second deed transferred any thing, it only transferred the debt which Shipley owed to Lister, not that which the complainant alleges to be due to him from Shipley.

The first mortgage cannot be made a deed of trust for the benefit of complainant, as there is no writing showing any such trust. 6 *H. & J.*, 24. 5 *G.*, 180. 4 *H. & J.*, 554. *Daniel's Chan.*, 471. *Gresley on Evid.*, 406. See act of 1825, ch. 50; that of frauds, ch. 3, sec. 7

Neither the bill of complaint affirms, nor does the evidence sustain, any such trust, or a trust of any kind. We maintain, that both must concur. 4 *H. & J.*, 518. 1 *H. & J.*, 293. *Ch. Pr.*, 114, 115. 4 *H. & J.*, 557. 1 *P. Wms.*, 321. 1

*Atk.*, 59. 1 *Verm.*, 366. *2nd Verm.*, 480. The first deed is fraudulent and void, as against the defendant Worthington and others, who, at the time of its execution, were creditors of Shipley—declared so by 13 Eliz., ch. 4, secs. 4 and 5. See 3 *Co.*, 81. 1 *H. & J.*, 3. It is void by 27 Eliz., ch. 4, secs. 5 and 7, against Worthington, as purchaser for valuable consideration. See *2nd Powel on Mort.*, 1127.

If the first deed was void, or passed no estate to Lister or McElderry, the second deed, of course, conveyed none. But if the first was a good deed as a mortgage to Lister, the assignment was inoperative, there being no consideration for it. But the second deed is of no effect, it being executed after the judgment against Shipley, obtained by the commissioners of Howard district, with a stay of execution thereon. Statute of Westminster, 2nd. Act of 1810, ch. 160. 3 *G. & J.*, 359. 1 *Blk.*, 443, 503. 1 *H. & J.*, 540. 11 *G. & J.*, 314.

As the second deed, on its face, purports to have been made to secure the payment of a promissory note given by Lister to complainant, the latter must sue at law on said note, before he could proceed in equity. See 5 *G. & J.*, 499. If this was not necessary, it should have been averred in the bill that the note was not paid, and the note ought to have been exhibited.

The proof does not sustain the complainant's allegation. Where there is an *express* declaration of trust alleged, one will not be implied. Here an express trust is alleged, the property to be conveyed for benefit of complainant. *Roberts on Frauds*, 100, 557. Trusts created by contract are not resulting trusts.

There was no money consideration, the amount of a lumber bill due many months, the consideration. There is no fraud charged to have been committed in the concoction of the instrument; the fraud is expressed to have been committed in denying that the first deed was taken for the benefit of the complainant. It must be alleged to have been committed at the time. 1 *Powel on Mort.*, 145, 147.

*Nelson* for appellee.

The bill in this case is based upon the two conveyances which are exhibited. The object of the complainant is to supplant the titles of the purchaser, obtained at the sale by the sheriff, which has been spoken of. The complainant asks a sale of the interest, which Worthington, as well as Lister and Shipley, has in this property, and to have the whole proceeds of sale applied to the satisfaction of his claim. There is no allegation in the bill, that the deed to Lister is, in any respect, not the deed which the parties designed that it should be. The parties rested contented with the deed, as it was executed, and suffered it to remain on the record, without any attempt to reform it. There is no charge of fraud, mistake or surprise, but the sole object is to get a sale under our act of 1785.

We maintain, that the papers themselves furnish a denial of the relief which the complainant claims. He may indeed have a case which entitles him to a sale of the premises, in order to pay what is due from Shipley to Lister; not any more of the money due from Shipley to complainant.

There is proof of declarations by Lister, if it be admissible, but, independently of the objection to parol proof furnished by the statute of frauds, how can the declarations of Lister be made evidence against Worthington? He, it is true, is a co-defendant, but he is interested in having the property sold, to pay the claim due from himself to complainant.

Are these declarations a part of the *res gestæ* or original transaction? You cannot interpolate this parol proof into the written instrument. This would be a repeal of the statute of frauds.

There is no testimony to establish the agreement, as set forth in the bill.

If the testimony be admitted, still the decree is not wrong. Complainant, it is true, might get relief, if there had been fraud, mistake or surprise. 4 *H. & J.,* 518. 6 *H. & J.,* 29. 1 *H. & G.,* 11, 293.

The complainant, by receiving an assignment of it, ratified

the first deed as it was. It was, it would seem, prepared under the direction of McElderry and sent into the country. If the parties agree upon the form of the instrument, no parol testimony can be admitted to show that at a previous time, a different arrangement was contemplated by the parties. He referred to the Alabama case, and that part of it in pages 621, 622, to show that in that case, relied on by the complainant, there was a fraud in obtaining the deed. The act of 1825, ch. 50, was made to avoid false credits. There can be no resulting trust in the case of a mortgage, unless it appears on the mortgage.

*Johnson, Sen.*, in reply.

In November 1841, the complainant refused to deliver for Shipley any more lumber, unless he obtained security, both for what was due and might become due.

The design of the mortgage to Lister, was to enable L. and S., one or both of them, to sell the property, or if it could not be sold, to assign the mortgage to the complainant.

Had the complainant a right to a decree for the sale of the property, while the entire interest was in Lister and Shipley? If he had, did not the complainant's claim continue as it was before, after the sale to Worthington?

Shipley's answer, to be sure, is not upon oath, but who can insist upon that? The complainant might, but none of his co-defendants. Shipley does not object to a decree for the sale. What right can Lister have to object? He has no interest in the property, and can claim, as a lien upon it, no debt as due to him, now that he has assigned whatever interest he had. The complainant wants no reformation of the deed. Has Worthington a case which entitles him to relief, or to resist the claim of the complainant? If the deed be inoperative, it must be so upon one of two grounds, fraud in fact or in law. No fraud in fact was practiced upon creditors. It was executed to secure payment to the complainant of money justly due to him for lumber sold to Shipley. He

was not embarrassed 9th November 1841, and he has not asked the relief which our insolvent system offers to debtors.

There is no proof of insolvency. Upon any evidence to be found in this record, a deed in November 1841, to his wife and children, could not be declared to be fraudulent, at the instance of creditors.

Was there a legal fraud? If so, then it is made fraudulent by stat. 13 Eliz., or by act of 1825. If void by stat. of Eliz., no man who was embarrassed could borrow money and secure the payment of it. If he can buy property, he can secure the payment of it. He increases his debts, but it is to be presumed that he adds as much to his assets. How insolvent must he be? Is it sufficient that he owes a dollar more than his property will sell for?

The statute of frauds has nothing to do with this case. The complainant does not ask the enforcement of a mere parol contract. It is not an agreement to give a mortgage and yet none given.

6 *Paige's Reports*, 305. If a man undertakes to act for another, he will be made to hold in trust. See also 1 *Paige*, 147.

2 *Alabama Reports*, in *p.* 624, the court said, they would prevent a deed from being used fraudulently, though it was not fraudulently obtained.

5 *Gill*, 138. Alexander's controversy here was with general creditors.

1825, ch. 50. Why this law was passed, and what was to be guarded against, will be seen in 1*st Gill's Reports*, 413.

This mortgage was good to convey any amount less than $1200. There was no debt due to Lister. He was made the mortgagee, not for himself, but for the complainant.

It is said, that the complainant ought to have sued at law. But see 1*st Bland*, 282.

Shipley, the mortgagor, is a competent witness. He is not interested, because he owes both debts.

There is in this case abundance of proof of an agreement to give a mortgage.

Tuck, J, delivered the opinion of the court.

The object of the present bill is to obtain a decree for the sale of the property therein mentioned, for the purpose of paying a debt, alleged to be due to the appellant, by the defendant Shipley. It is said that this can be effected in one of three modes, either by considering the property as charged with a trust for the benefit of the complainant to the extent of his claim; or, by reforming the mortgage from Shipley to Lister, and his assignment thereof to the appellant, so as to give to them an effect contrary to their apparent intent; or, by foreclosing these instruments, for the use of the complainant as assignee.

Whatever may be the doctrine elsewhere, as shown by the cases referred to in the argument, we consider the law to be well settled in Maryland, that parol evidence is inadmissible in a case like the present, to contradict, add to, or vary the terms of a written instrument; and although a court of chancery will, upon proof of fraud, mistake or surprise, raise an equity by which the agreement will be rectified according to the intent of the parties, it will not interfere where the instrument is such as the parties themselves designed it to be. For if they voluntarily choose to express themselves in the language of the deed they must be bound by it. *Wesley vs. Thomas,* 6 *H. & J.,* 24. *Watkins vs. Stockett,* 6 *H. & J.,* 435. *Bend vs. Susq. Bridge Co.,* 6 *H. & J.,* 128. *Harwood vs. Jones,* 10 *G. & John.* 404.

The mortgage from Shipley to Lister, professes to secure a debt from the former to the latter, of $1200, and sometime afterwards Lister assigned this mortgage to the complainant, to secure a debt of $936.34, for which, as the assignment states, he had passed his note to the complainant. The amount here mentioned is the precise sum alleged to be due by Shipley to McElderry. These exhibits appear in the record. The bill, as amended, states: "And your orator further avers and charges, that notwithstanding the said assignment of the said leasehold property was made by the said Shipley to said Lister, with the express agreement and understanding

between said Lister and Shipley and your orator, at and before the execution of the said agreement, that the same was made and given to secure your orator's claims against said Shipley, as hereinbefore recited, yet the said Lister now fraudulently denies that the same was given upon said agreement and understanding; and with a view to defraud your orator, is attempting to deprive him of the benefit which it was the object of the said assignment to secure to your orator, he, the said Lister, alleging and claiming that said assignment was made and given for his sole use and benefit. Your orator also alleges and charges, that to give to said Lister or to any other person than your orator, the benefit of said assignment, would be a gross fraud upon your orator, and upon the agreement under which said assignment was executed by said Shipley."

The appellant offers to show, by parol proof, not that these instruments are not, in terms, what the parties to them intended that they should be at the time they were executed, but that an agreement was entered into by them at and before that time, that Lister should hold the property as a security for the complainant's claims, and that he fraudulently denies the true character and purpose of the mortgage and assignment; and on this allegation of fraud, it is insisted, that equity should grant relief.

There is no essential difference between this and the case of *Watkins and Stockett,* where the complainant alleged that a deed absolute in terms, was designed to operate as a mortgage, and that the grantee, in fraud of a parol agreement made cotemporaneously with the deed, refused to recognize it as a mortgage, but claimed the property as his own, against the right of the grantor to redeem. The Court of Appeals said, (it appearing that the deed had been drawn and executed as the parties intended,) that the complainant was not entitled to change the character of the deed by parol proof. This is not a resulting or implied trust, such as arises where a party buys land with another's money, and takes the deed to himself. There, upon proof that the purchase money

was furnished by the person claiming the land, the law raises the trust in his behalf, as fully as if it had been declared at the time; here, there is no room for implication. The bill shews that the deed and assignment were drawn and executed according to the intention of the parties. The complainant seeks, not to raise an equity by operation of law, but to set up a conventional trust on the foundation of a special parol agreement, contrary to the provisions of the statute of frauds, which requires that trusts in relation to lands, &c., shall be proved and manifested by some writing signed by the party who is by law enabled to declare such trust. *Dorsey vs. Clark,* 4 *H. & J.,* 551. *Jones vs. Sluby,* 5 *H. & J.,* 372. If it were alleged and proved that Lister had undertaken to procure security for McEldery, by a lien on this property, and that in fraud of this agreement, or by mistake, he had taken the deed to himself, the case might be within the principle of the Maryland decisions.

If the complainant be regarded as mere assignee of the mortgage, and as claiming as such, he cannot succeed on the present record, because the pleadings do not present his claim in that aspect.

We do not consider the case as within the *sixth* section of the act of 1832, *ch.* 302. If the record were remanded, and the bill amended, so as to present a case upon either of the hypotheses suggested in argument, it would, as amended, be so repugnant and inconsistent in its several parts, as perhaps to defeat the complainant's recovery altogether. *Mitford's Pl.,* 385. *Cresy vs. Bevan,* 13 *Simons,* 354. To enable the complainant to proceed *de novo,* as he may be advised, we shall reverse the decree of the chancellor dismissing the bill, and sign a decree dismissing it without prejudice. The costs to be paid by the appellant. 3 *Gill and John.,* 510. 6 *G. & J.,* 446. 7 *Gill,* 500.

> *Decree reversed, and bill*
> *dismissed without prejudice.*