John Dailey and Basil T. Garlitz *vs.* Thomas Grimes.

*Damages for an illegal Distress—Evidence—Practice—Appeal—Rent—Landlord and Tenant—Surrender—Distress.*

By an agreement between A. and B., the former entered upon the occupation of the farm of the latter, on condition, that instead of paying rent, he would make improvements and furnish produce sufficient to pay the taxes on the farm. A. continued in possession for some years, complying with the terms of the agreement to the satisfaction of B. The farm was sold in September, 1863, under an execution, to C. D., as the agent of C., in January following issued a warrant to the Sheriff to distrain the goods of A. for rent claimed to be due C. Under the distress warrant, the Sheriff seized a quantity of wheat, rye, oats, hay and buckwheat, and sold the same, D. becoming the purchaser. A. brought an action against D. and the Sheriff, to recover damages for the taking and carrying away of his property, charging that he was thereby compelled to abandon the business of farming, and to sell his horses, cows, and other stock, and his farming utensils and household property, at a great sacrifice. The general issue of "Not Guilty" was pleaded. HELD:

1st. That it was competent for the plaintiff, after having proved the taking of the property by the defendants, to show, for the purpose of increasing the damages, the value of his stock, his condition after the taking, the scarcity and high price of provender in the neighborhood, the sale of his stock at public sale, the prices which it brought, and the terms of sale; and that in estimating the damages sustained by the plaintiff, the jury if of the opinion that no rent was due and in arrear by him, was not limited to the value of the property taken and sold.

2d. That D., one of the defendants, having stated on his cross-examination, that he had pastured his cows in one little lot of two or three acres on the farm, by the plaintiff's permission, after its sale, and after he had agreed to give up its possession to the purchaser, and that he, D., had never authorized his cattle to be turned into other fields, it was competent for the plaintiff to prove by a witness that he had seen D.'s cows repeatedly driven by his boys, and put into a meadow on the farm which was not the little lot of two or three acres, and that he had seen D. on several occasions do the same thing, not only as tending to show a surrender of the farm by the plaintiff, but also to contradict the testimony of D.

To rebut the liability to the distress for rent, the plaintiff proved the terms of his tenancy, by B., and that the improvements which he made were

Dailey and Garlitz *vs.* Grimes.

equal in value to the rent; he then proved by a neighbor, a farmer and a renter of land, the condition of the farm during his tenancy, and the improvements which the witness considered of more value than a reasonable rent. HELD:

That it was competent for the plaintiff to prove by this witness that in *his judgment,* the improvements made on the farm during the plaintiff's tenancy, were a proper equivalent for a fair rent.

The allowing an immaterial question to be asked is no ground for a reversal, where it does not appear to the Court that it could have influenced the verdict of the jury.

The admission of rebutting evidence, after the prayers had been submitted on both sides, and the argument thereon nearly concluded, at the instance of the plaintiff, who had notified the defendants of his intention to offer the evidence, and its nature, is no ground of appeal, the Court having a discretion, under one of its rules, to permit the evidence to be given.

A purchaser at Sheriff's sale, as an assignee in law, is entitled to the rent which accrues or becomes payable, after the day of sale, provided the possession is not surrendered to him.

When A. became the tenant of B., with the understanding that instead of a rent, he should make improvements on the premises, and furnish produce sufficient to pay the taxes, the improvements to be made from year to year, during the tenancy, and these had been made to the satisfaction of the landlord, together with payments for the taxes, prior to the sale to C. of the premises, C. has no claim for rent for any period prior to the day of sale.

And it being agreed that these terms of renting should be embodied in a written lease, and the same was never done, and the tenant took possession under the agreement, the fact that such lease was not reduced to writing, does not change the terms of the lease between the parties.

Where pending a tenancy, the premises are sold by the Sheriff, and the purchaser gives notice to the tenant to quit, and he agrees to give up possession, and the agent of the purchaser puts his cattle on the premises to pasture, and receives possession from the tenant, but permits him to keep his stock on the farm during the winter, on condition that he would remove them in the spring, it may be presumed that the tenant had surrendered the premises, and the purchaser cannot distrain for any rent for the term so surrendered.

Where, in an alleged agreement for occupation of premises, no time is specified when the tenancy was to expire, when the rent was to accrue, or whether it was for past or future occupation, the terms are too vague and indefinite to constitute a renting which would authorize a distress.

APPEAL from the Circuit Court for Allegany County.

The facts of this case, as also the exceptions which were taken at the trial below, are sufficiently disclosed in the opinion of the Court.

The cause was argued before BOWIE, C. J., BARTOL, WEISEL and CRAIN, J.

*Thomas J. McKaig*, for the appellants, insisted:

That the testimony of James Danby, who stated that "he saw Dailey's cows repeatedly driven by Dailey's boy, and put into the meadow above the road," in October, 1863, was not admissible; it neither supports the action nor can it be received in aggravation of damages. Garlitz, the sheriff, who executed the distress warrant, had nothing to do with it. It is proof of a trespass q. c. f., at a different time, by Dailey's boy, but it is not within the issue made by the pleadings.

The question asked the witness Casteel, "Whether, in his judgment, the improvements made by the appellee from 1857 to September, 1863, were a proper equivalent for a fair rent?" and to which he answered, he thought they were, was altogether improper. It was substituting the judgment or opinion of a witness for two distinct and independent facts to be found by the jury: First, what was the value of the improvements; second, what was the amount of the rent. Even if the witness had been an expert the question would not have been permissible. *Baltimore & Ohio Railroad Company vs. Thompson*, 10 *Md. Rep.*, 76. The first prayer of the plaintiff ought not to have been granted, because the judgment was a lien on the farm from the 17th of January, 1862. The execution was levied upon the farm in December, 1862, and it was sold in September, 1863, and the whole rent for the year 1863, be it what it might be, passed by the sale to the purchaser. The prayer was well calculated to deceive

the jury, by instructing them that "there was no evidence to show that said Harness was entitled to any rent by virtue of any tenancy existing previously to such sale," whereas it was for the jury to find what was the renting by Armstrong to the plaintiff. Then the sale placed Harness in the position of landlord towards Grimes for all rent then accruing, and not due at the day of sale. If the contract with Armstrong embraced anything outside of repairs or improvements, whether it were a share of the crop or a money rent, and that rent was not due at the day of the sale, it passed by virtue of the sale to Harness. As the judgment was in January, 1862, before the year had commenced, and before the crop was sown, or the hay had commenced to grow, or Grimes' rent for the year had attached, and the execution was levied in December, 1862, the rent and crops of the year 1863, were bound by the execution, and passed to Harness,—and the contract between Dailey, as agent of Harness, and Grimes, after the sale, was therefore a perfectly valid contract.

The second prayer of the plaintiff, directing the jury that the conversation between Dailey and Grimes did not amount to a contract for rent, was objectionable, because if any part of the rent for the year 1863 was still due, and Grimes was to enjoy the pasture from September 5th to the following January or April, and part of his crop was still in the ground, the judgment and execution under which Harness had purchased being older than Grimes' renting, the crop in the ground, to say the least, if not the whole rent for the year, passed by the sale; therefore it was clearly the right of Harness to say on what terms Grimes should hold his crop, and their agreement in regard to the rent was legitimate, whether it was a new contract or a carrying out of Grimes' contract with Armstrong.

Dailey and Garlitz *vs.* Grimes.

*J. H. Gordon*, for the appellee, referred to the following authorities : 1 *Greenleaf on Evidence, sec.* 440 ; *Taylor's Landlord and Tenant, sec.* 561 ; *Smith on Contracts,* 88 ; *Lamar vs. McNamee,* 10 *G. & J.,* 124 ; *De Young vs. Buchanan,* 10 *G. & J.,* 149 ; *Anderson vs. Garrett,* 9 *Gill,* 131 ; *Burtles vs. The State, use of Turner,* 4 *Md. Rep.,* 273.

WEISEL, J., delivered the opinion of this Court.

The appellee was plaintiff below. He sued the appellants in the Circuit Court for Allegany County, and declared that he being engaged in farming, and having provided himself with the necessary implements of husbandry, and with all the necessary stock of horses, cattle, &c., for carrying on said business successfully and profitably, and having produced a large quantity of wheat, rye, oats, hay and buckwheat, for the use of his family, and for feed and provender for his stock, the defendants, on the 25th of January, 1864, with force and arms, unlawfully seized, took, and carried away, all the said wheat, rye, oats, buckwheat and hay, of the plaintiff, by which means he was greatly injured and damaged, and was thereby compelled to abandon the business of farming, and to sell his horses, cows, sheep, hogs and other stock, and his farming utensils and household property, at a great sacrifice. To which the general issue plea of "Not Guilty" was put in. The verdict being for the plaintiff, the defendants appealed.

In the progress of the trial the defendants took five exceptions to the introduction of proof.

The first was to the admissibility of the proof of Nathan Casteel, a witness for the plaintiff, who, after proving the taking by the defendants of the hay, rye and oats, proceeded to state, subject to exceptions, his knowledge of the number, quality and value of the plaintiff's stock, his condition after the taking of the hay, rye and oats ; the scarcity and high price of such food in the neighborhood;

and the sale, by the plaintiff, at public sale of his stock, and the prices which it brought, and the terms of sale. He also testified as to the defendant Dailey's previously expressed purpose to haul away the hay.

Similar testimony was offered by Merrill and Smouze, and taken, subject to exceptions, which was ruled in as admissible, and formed the subject of the defendants' second exception.

We think that this testimony was admissible under the issue. It was liable to be rebutted by the defendants, who also put in proof their proceedings under a distress warrant, which, if regular, would have the effect of destroying the tendency of the proof to increase the damages, for which purpose it was offered by the plaintiff. The Court below was therefore right in admitting the testimony in the first and second exceptions.

The plaintiff and defendants having both completed their testimony and rested, and the defendant Dailey, one of the defendants' witnesses, having stated on his cross-examination that he had his cows in one little lot on the farm, by Grimes the plaintiff's permission, the lot containing two or three acres, after the sale of the farm, and after the plaintiff had agreed to give up its possession to the purchaser; and that he never authorized his cattle to be turned into the fields above the road, the plaintiff then offered to prove by James Danby that he saw Dailey's cows repeatedly driven by Dailey's boy and put into the meadow above the road; that he saw Dailey on several Sundays do the same thing, commencing in October, 1863; the field into which he turned them was above the road, and was the main meadow, and was not the little patch of two or three acres below the road.

Dailey was the agent of Harness in the purchase of the farm, and one purpose for which this proof was offered was to show that Grimes had surrendered the possession of the farm, and was not the tenant of Harness or liable

to distress for rent. The defendants objected to its admissibility, but the Court, permitting it to go in, they excepted, and this constituted their third exception.

In our opinion the Court committed no error in admitting this proof. Besides its tendency to show a surrender, it was admissible to contradict the proof of Dailey referred to.

To rebut the liability to the distress for rent the plaintiff then proved by Armstrong, to whom he had been tenant of the premises, that the consideration for the letting was the making of improvements on the farm in place of rents, with something more to pay taxes; and that he continued in possession under this arrangement, and during the time he was in possession he made improvements equal in value to the rent, and furnished besides some produce to cover the taxes; that this bargain was made in the spring of 1857, 1858 or 1859. He then proved by Nathan Casteel, a neighbor, a farmer and a renter of farms in the neighborhood, the condition of the farm since 1857, and the improvements made by the plaintiff, which he considered of more value than a reasonable rent. The witness was then asked by the plaintiff whether, in *his judgment*, the improvements made by Grimes from 1857 to September, 1863, were a proper equivalent for a fair rent, to which he answered that he thought they were. This last question and answer were objected to by the defendants; but the Court overruled the objection and permitted the answer to be given in evidence. To this the fourth exception was taken.

If the question were propounded without reference to any contract, and as a mere independent inquiry, it would have been immaterial and impertinent, and should have been rejected as accomplishing no purpose under the issue. But, in this light, it would form no ground for reversal, as it cannot be perceived how it could have

influenced the jury in their verdict. 9 *Gill*, 131. But the same kind of testimony was in already by this witness and by Armstrong, without objections; and if the point of the objection was to the judgment of the witness, which is our understanding of the question and answer, we think he could, as a farmer in the neighborhood, and having knowledge of the improvements, speak as to their value. He was not called upon as a mere *expert* for his opinion upon a theoretical state of facts, but for his judgment of the value of matters within his knowledge and under his observation, and on which he was competent from his occupation and residence to form an opinion. In this view the testimony was admissible.

The fifth exception was taken to the admission of proof after the prayers had been submitted on both sides and the argument thereon nearly concluded. The Court allowed it under the 54th rule of Court, which invests it with a discretion in such cases. The witnesses had been retained for the purpose by the plaintiff, and the defendants notified of the fact and of the nature of the proof to be offered, which was rebutting. In this state of the case, and under the rule, the Court had a discretion to permit the evidence to be given, and the exercise of it is no ground of appeal.

The sixth exception, also taken by the defendants, was to the rulings of the Court upon the prayers, and to these we will now address ourselves. A review of the material parts of the testimony is necessary on this branch of the case.

Armstrong, the landlord of the plaintiff below, suffered judgment against him in January, 1862, on which a *fi. fa.* was issued returnable to January Term, 1863. The land, in possession of the plaintiff as tenant, was sold under the *fi. fa.* by the sheriff on the 5th of September, 1863, to Charles E. Harness, Dailey, one of the defendants, being his agent at the time, and making the purchase for him.

Shortly after the sale, Dailey went to Grimes, the tenant, "and asked him what portion of the crop he would give Mr. Harness—he said, one third of the crop then on the ground." When the potatoes were dug, Harness received his share of them. Some weeks after the above interview, another took place between the witness Dailey and Grimes, when the latter said, "he did not intend to give Harness any part of the crop;" the precise time not recollected; but it was before he sent him a written demand for the possession. When this demand was made, about January, 1864, (as proved by another witness, Smouze,) Grimes agreed to give up possession; he had left the house before that, as unfit to live in, but his stock was still there, and remained there until the 13th February, 1864, when it was sold, but the witness did not know at what time he was to give up possession of the farm, but Grimes said in answer to the demand, there should be no trouble; that he would give up possession. Grimes had raised some potatoes, some wheat, and some buckwheat that year. All the crop on the ground had been cut and gathered before the 5th September, 1863, the date of the sheriff's sale, the buckwheat and potatoes afterwards. The defendants below then gave in evidence the proceedings in distress for rent by Harness upon an account, dated January, 22d, 1864, for "one year's rent, being one third of the crop due and in arrear for the farm occupied by Grimes and belonging to said Harness in Allegany county, Md. Under the warrant the crop was taken, appraised and sold, which is the taking, &c., complained of in the declaration. The rebutting testimony by Armstrong as to the nature and terms of the tenancy, and by other witnesses, has been sufficiently stated already in considering the other exceptions.

The term, it seems then, under which Grimes held the premises under Armstrong expired on the 1st of April, 1864. Such was Armstrong's proof, and at that period

he had received notice to quit. Whatever rent became payable or accrued after the 5th of September, 1863, the purchaser, as assignee in law, became entitled to, if the possession was not surrendered to him. *Martin vs. Martin,* 7 *Md. Rep.,* 376. The theory of the plaintiff's case was that the rents reserved by Armstrong were in improvements to be made at any time during the lease, that these had all been made satisfactory to the landlord and prior to the date of the sheriff's sale, together with payments for the taxes, and if any improvements remained to be made, still the same could not be distrained for as payable in kind. The first, fourth and sixth of the plaintiff's prayers were based upon this aspect of the case, and they were properly granted.

Another hypothesis of the plaintiff's case was that the possession of the land had been surrendered to the purchaser, and if so he could not maintain his distress, and with that view the fifth prayer of the plaintiff was offered, which we think was also correctly granted.

Still the case presented another aspect, and to meet that the second and eighth prayers of the plaintiff were submitted ; and that was whether a new agreement for occupation took place between the tenant and the purchaser. This rested upon the testimony of Dailey as to the interviews he had with Grimes after the sale by the sheriff, in which the latter promised to pay one third of the crop on the ground. On this in fact the proceedings by distress were grounded. An examination of the proof on this point must satisfy any mind of its utter vagueness and insufficiency to establish such a contract as would sustain such a proceeding. No time is specified when the term was to expire, when the rent was to accrue, or whether it was for past or future occupation. Even if the language of the Code (Art. 53, sec. 8, *et seq.,*) which authorizes a distress for rent reserved in grain or produce, will admit of the interpretation which is applied, or attempted to be applied,

Dailey and Garlitz *vs.* Grimes.

as in this case, to grain already severed, and not to crops to be raised after the commencement of the tenancy on the premises, still the other terms proved by the witness are too vague and indefinite to constitute a renting, which would authorize the remedy by distress, or justify the statement of the account which the purchaser exhibited as the foundation of his proceeding. These prayers were therefore properly granted.

The eighth prayer was excepted to on the ground that it put a question of law to the jury. The plaintiff asked for an instruction, on the ground that the contract was void for want of consideration, and therefore the defendant's remedy by distress would fail on that ground. But the Court has already said that if the agreement were in this respect good, yet in all other respects it was vague, indefinite, and inoperative for this purpose. The instruction, therefore, as given was immaterial, and could work no injury to the defendants, and its reversal would confer no benefit on them.

The seventh prayer was conceded in the argument to be unobjectionable. We think also the jury was properly instructed under the third prayer, upon the question of damages.

The defendants offered ten prayers, two of which, the second and seventh, were granted by the Court, and the others refused. The second does not appear in the record, from loss or otherwise, and the Court cannot see or know what it contained.

What has already fallen from the Court in reference to the plaintiff's prayers, and also upon the subject of the conversations between Dailey and Grimes about the renting, and of their insufficiency as a contract to sustain the proceedings by distress, will dispose of the first, third, fourth, fifth, sixth and tenth prayers of the defendants, as they all go upon the right to distrain, and the justification, by that means, of the taking. They were therefore properly rejected.

Dailey and Garlitz *vs.* Grimes.

The eighth and ninth prayers assert that the contract between Harness (through Dailey) and Grimes about one third of the crop on the ground as rent for the farm, if established to the satisfaction of the jury, created a joint ownership, or tenancy in common, between them of the crop, and that therefore this action could not be maintained; and to sustain this position the case of *Ferrall vs. Kent*, 4 *Gill*, 209, is relied upon. That was an action of replevin. And without determining upon the authority of that case whether a tenancy in common did exist in the case under consideration, if the facts were found as stated; but conceding such to be the law of that case, yet in this case the plaintiff was in possession of the crop, and in the absence of all proof express, or of usage, when the rent was payable, was entitled to the possession at all events to the expiration of the lease, which was the 1st of April, 1864; after the bringing of the suit, the plaintiff was clearly entitled to maintain trespass. "Unless a plea in abatement is interposed, a tenant in common may recover in trover or trespass his *aliquot* share or proportion of interest in a chattel, but the rule that gives him the right to sue, confines him to his own interest or share." *Harker vs. Dement*, 9 *Gill*, 15. So that under the circumstances, if a joint owner, he could maintain the action; though the measure of his damages might vary according to circumstances. But that is not a question under these prayers. His right to maintain the action is controverted by them, and this right, we have shown, was his. The prayers were therefore properly rejected.

We have thus passed upon all the exceptions, and finding no error in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 15th July, 1868.)