# VEADER LEONARD *v.* ROLAND PARK APART-MENTS COMPANY.

## [No. 30, October Term, 1931.]

*Decided January 12th, 1932.*

452

The cause was argued before Pattison, Urner, Adkins, Offutt, Parke, and Sloan, JJ.

*William L. Marbury* and *Jesse Slingluff, Jr.,* for the appellant.

*Eben J. D. Cross,* for the appellee.

Sloan, J., delivered the opinion of the Court.

On July 12th, 1926, the Roland Park Apartments Company, appellee, leased Dr. Veader Leonard, appellant, an apartment in the building in Baltimore known as the "Roland Park Apartments" at the yearly rental of $2,100, payable in monthly installments of $175, for the term of three years, beginning October 1st, 1926, and ending September 30th, 1929. There was incorporated in the lease the following provision: "That this lease renews itself from year to year unless notice is given by either party in writing ninety days previous to the expiration, of the term of this lease." The lease was supplemented by a letter from the appellee, signed by its manager, William J. Martin, in which there was this provision: "It is also understood and agreed that should the noise from the cars of the United Railways be such that it is hindering you and same cannot be stopped within a reasonable time, permission will be granted to vacate said apartment upon thirty days' notice to this effect."

Dr. Leonard moved into the apartment in October, 1926, and in June, 1927, moved out, because, as he said to Mr. Martin, "things were so unbearable he had to move out." Dr. Leonard said he "gave both Mr. Martin and Mr. Cross as one of his reasons for leaving" that he "was taking advantage of the clause which had been attached to the lease involving the noises from the street cars and * * * was giving him 30 days' notice, moving out at once and would pay one month's rent in lieu of notice." In the fall of 1927 Dr. Leonard moved back, paid all his arrears of rent, and occupied the apartment until July 1st, 1928, when he moved into a house which he had bought at Guilford in Baltimore. He

had informed Mr. Martin of his purchase. He testified: "I wanted him to do what he could to sub-lease the apartment and that I would be willing, if necessary, to take a loss on it." Mr. Martin not having succeeded in finding a tenant, Dr. Leonard placed the property in the hands of a real estate agent, who got a tenant, John J. May, for the term beginning in December, 1928, at $100 a month; the subtenant remaining until his lease expired September 30th, 1929. During the time Mr. May occupied the apartment he paid Dr. Leonard by check $100 per month, and he in turn paid the appellee by sending it his check for $75 and Mr. May's check, indorsed by the appellant. Mr. May never paid his rent directly to the appellee. He was never accepted as a substitute for Dr. Leonard, who was recognized as lessee for the three years of the lease, and who during all that period dealt with and treated the appellee as his landlord. Mr. Martin testified that during his occupancy of the apartment Mr. May did not tell him "anything about street cars, noise or a thing." Mr. May testified: "I moved into this apartment on December 1, 1928. During the time I was there the noise from the street cars was very annoying to me. After my lease had expired on October 1, 1929, I wouldn't continue to live there. Q. Why? A. Because of the noise of the street cars." "That was the chief reason, and another reason was I would not pay that amount of rent. There were two reasons." From the time May moved out, except for a brief period shortly prior to October 1st, 1930, the apartment was unoccupied. Toward the end of the year a tenant was secured by the appellee, and an allowance by way of mitigation of damages allowed for the rent received.

The lease provided that it "renews itself from year to year unless notice is given by either party in writing ninety days previous to the expiration of the term of this lease." No such notice having been given by either party, the appellee, by William J. Martin, its manager, on August 8th, 1929, wrote Dr. Leonard that his failure to give the notice required renewed the lease for another year, and tendered its services as his agent toward securing another tenant who would relieve

him of the obligations of his lease. On August 20th, 1929, Dr. Leonard wrote the appellee as follows: "I wish * * * to exercise the privilege contained in Paragraph two (the noise provision) of the letter forming a part of my lease dated July 12, 1926, with your company, and hereby notify you that I vacate said apartment on the 30th day of September, 1929, in accordance with the terms of said paragraph."

The law of this state applicable to the surrender of leases, as stated in *Venable's Syllabus,* 53, is: "The 3rd section of the Statute of Frauds (*Alex. Stat.* 509, 521), provides that 'no leases, estates or interests either of freehold or term of years, or any uncertain interest of, in, to or out of any messuages, manors, lands, tenements or hereditaments shall be assigned, granted or surrendered, unless it be by deed or note in writing, signed by the party so assigning, granting or surrendering the same, or their agents thereto lawfully authorized by writing; or by act or operation of law.' It follows that an express surrender must be in writing, and this is true even where the lease itself is not in writing. (*Lammott v. Gist,* 2 H. & G. 433,) * * * 'It has also been held that where the landlord accepts a verbal surrender and actually accepts or puts another tenant in possession (*Lamar v. McNamee,* 10 G. & J. 116; *Kinsey v. Minnick,* 43 Md. 112; *Boyle v. Peabody Heights Co.,* 46 Md. 627), or himself takes possession (*Dailey v. Grimes,* 27 Md. 440) it is a surrender in law (*Alex. Stat.* 522), but this is doubtful if the original lease was created by deed (*Sm. L. & T.* 230)'." Mr. Tiffany (2 *Landlord and Tenant,* 1313) says the provision of the Statute of Frauds "has been recognized as operative in at least one state in this country (citing *Lamar v. McNamee,* 10 G. & J. 116; *Lammott v. Gist,* 2 H. & G. 433), while in a few others a provision expressed in substantially similar language has been adopted."

In this case the provision of the lease requiring the lessee to give notice in writing three months before its expiration, otherwise the lease would renew itself for a year, was not taken advantage of by the lessee, but he has undertaken to avail himself of the supplemental clause that he could termi-

nate the lease on thirty days' notice if the "noise from the cars of the United Railways be such that it is hindering you." The notice was not given until after the appellee had notified Dr. Leonard that his failure to give the notice to quit tenancy required by the lease had renewed or extended it for another year, and it thus reduces the question to one of fact for a jury, and comes to this court on the exception to the action of the trial court in refusing both of the defendant's (appellant's) prayers and in granting the plaintiff's (appellee's) second prayer.

The case was tried before the court sitting as a jury, and, the judgment being in favor of the plaintiff (appellee) for the amount of rent claimed, the defendant appealed.

The appellant contended that the uncontradicted evidence showed the appellee had assented to the assignment of the lease, and therefore the plaintiff's second prayer, which submitted this fact to the jury, should not have been granted. There was evidence that the appellee had not accepted John J. May as its tenant and no evidence to the contrary, except a letter from Martin to May, dated July 31st, 1929. Then, too, May paid his rent to Dr. Leonard as his lessor, to the end of his term. The letter from Martin to May of July 31st, 1929, said: "In reading over this lease, notice on the space under the heading, 'Consent to Assignment.' If you will read this clause you will note that you signed with Dr. Leonard assuming all covenants and agreements herein contained as the lessee, and that Dr. Leonard no longer is personally obligated to same. In view of the above, believe you had better mail me a written notice to sublease this apartment as of October 1, 1929, for you and we will try every way possible to sublease this for you as per the agreement in the lease." The letter then advised Mr. May that his failure to give notice, ninety days before October 1st, 1929, of his intention to surrender the lease, renewed it for another year. The next day Mr. May wrote Mr. Martin advising him "that no assignment was executed by the lessor, lessee and assignee in this instance the agreement was between Dr. Veader Leonard and" himself, and

the uncontradicted evidence was that there had not been a
consent by the appellee to the assignment to Mr. May. The
letter of Martin to May was simply a mistake, and the court
by its verdict so found.

The facts recited in the plaintiff's second prayer were
necessary to the appellee's right to a recovery, and the verdict
implies the finding of these facts, with no sufficient evidence
to the contrary. We therefore find no error in the granting
of this prayer.

The defendant's first prayer was a request for an instruc-
tion to the effect that, if the defendant was unable to sublet
the premises for the year 1929-1930 on account of the noise
from the street cars, "then the defendant was hindered by
said noise in the meaning of the lease," and that, if thirty
days' notice of surrender was given the appellee of the inten-
tion of the appellant, for this reason the verdict should be for
the defendant. This would be a good prayer if there was
evidence that this was the only reason May declined to renew,
but he testified that there were two reasons: (1) The noise,
and (2) that the rent was too high. Whether he meant
$175 or $100 per month does not appear. The prayer should
have required the court, sitting as a jury, to find that May's
reason for moving out was on account of the noise, and not
because of his refusal to pay the amount of rent demanded.
With this omission the prayer was properly refused as mis-
leading. *Winner v. Penniman,* 35 Md. 163, 168; *Roddy v.
Finnegan,* 43 Md. 490; *Balto., Ches. & Atl. Ry. Co. v.
Trader,* 106 Md. 635, 642, 68 A. 12; *Adams v. Somerset
County,* 106 Md. 197, 201, 66 A. 695; *Booth Packing Co. v.
Greuner,* 129 Md. 392, 396, 99 A. 714; *Kaufman Beef Co.
v. United Rys. & Elec. Co.,* 135 Md. 524, 528, 109 A. 191;
*Great Eastern Casualty Co. v. Schwartz,* 143 Md. 452, 122 A
647.

The defendant's second prayer, which was refused, prayed
an instruction that, because "the plaintiff received actual,
oral notice that the defendant wished the lease to terminate
at the end of the term and that the plaintiff did not at that
time object to the form of the notice nor give any manifesta-

tion that said notice was inadequate and that the plaintiff did not, up to ninety days previous to the expiration of the term so object or give any manifestation that the said notice was inadequate, and if it also appears that the defendant relied on the action of the plaintiff and that, so relying, the defendant failed to give written notice," then the law is that the plaintiff is stopped from requiring the ninety days' notice provided for in the lease in order to avoid a renewal for an additional year. The record fails to show any affirmative act done by the appellee from which it might be inferred that the written notice required had been waived. Dr. Leonard, on the receipt of the letter of the plaintiff to him of August 8th, then realized that his failure to give the notice had renewed the lease for a year, and it was then that he fell back on the noise provision which has already been discussed. The cases of *Carmine v. Bowen,* 104 Md. 198, 64 A. 932; *Biggs v. Stueler,* 93 Md. 100, 48 A. 727; *Lamar v. McNamee,* 10 G. & J. 116, and *Kinsey & Holsap v. Minnick,* 43 Md. 112, cited by the appellee, are all distinguishable from the instant case, and in them the principles there stated support the contentions of the plaintiff in this case.

The trouble from which the appellant attempts to extricate himself is all due to his own neglect of his contractual rights. Because it is a hard bargain, or one in which the consequences of neglect are serious, is no reason why the contract should be set aside. Persons capable of understanding the meaning and intent of their contracts must be held to their engagements so long as no rule of law is violated. "There is no general rule better settled, or more just in itself." *Wilson v. Hilliard,* 131 Md. 10, 16, 101 A. 603, 605; *Dixon v. Clayville,* 44 Md. 573, 578; *McElderry v. Shipley,* 2 Md. 25, 35. As expressed in *Wesley v. Thomas,* 6 H. & J. 24, 27: "It has been judicially said, 'that men's deeds and wills, by which they settle their estates, are laws which private men are allowed to make, and they are not to be altered, even by the King in his court of law or conscience.' "

The appellant reserved two exceptions to rulings of the court sustaining the appellee's objections to the offer in evi-

458

dence of the appellant's sublease to John J. May. It was in evidence that there was such a lease, with the beginning and end of the time it had to run. The lease shows that it was unconditional, so that its actual introduction would not have thrown any light on the facts in evidence. It was immaterial, anyhow, as May remained to the end of his lease, and then left the premises for two reasons—the noise and the excessive rent—but there is no evidence that he ever made either of these complaints to the appellant, his lessor.

W find no error in the court's rulings on the prayer or on the evidence.

*Judgment affirmed, with costs.*