## PREVAS *v.* GOTTLIEB

[No. 314, September Term, 1961.]

*Decided July 3, 1962.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Konstantine J. Prevas,* in proper person, for appellant.

*Richard C. Murray* and *Frank E. Cicone,* with whom were *Smith & Harrison* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

The appellant, Konstantine J. Prevas, plaintiff below, an attorney now appearing in proper person, derived his claim by an assignment from his sixty-five year old mother. He brought suit in the lower court to recover damages for the unpaid monthly rental payments accrued as the result of the breach of the lease originally entered into between his assignor and the appellee, William Gottlieb, defendant below. After a full trial on the merits before the court, sitting without a jury, the trial court found as a fact that the former landlord and her attorney did, by their conduct, "lead the defendant to believe that at the time of the signing of the so-called amendment to the lease, on July 31, 1952, he was in actuality being relieved from liability on the lease, and that [one] Becker was being substituted for him as sole tenant"; and on October 11, 1961, entered judgment in favor of the defendant and against the plaintiff for costs, which gives rise to this appeal.

On July 1, 1949, the appellee and Adolph Becker entered into an agreement of partnership to operate a business known as Mardi-Gras Novelty Amusements, at 424 E. Baltimore Street, Baltimore, Maryland. On March 7, 1952, Gottlieb and Katherine Prevas entered into a lease covering the premises at which the partnership business of an amusement arcade and lunch counter was conducted. The terms of the lease were for five years beginning June 1, 1952, and ending May 31, 1957, at a rental of $6,600 per year, payable $550 a month in advance. On or about July 31, 1952, Gottlieb and Becker went to Gottlieb's attorney, Melvin Silberg, to dissolve their partnership. According to the testimony of Gottlieb and Silberg, Mr. Silberg, over the telephone, spoke with a person identified by Gottlieb as Katherine Prevas, owner of the premises and mother of the appellant. They both testified that she said that she would let Gottlieb off the lease and she would put Becker on the lease, but that she would not surrender a deposit of $3,000 placed in escrow as security for performance of the terms of the lease. Gottlieb said he and Becker then went to Mrs. Prevas' house where she said, in response to Gottlieb's request to be let off the lease, "don't let it worry

you" and "I'll let you off," and Mrs. Prevas then told him to see her son about it. He further said he then went with Becker to see her son, the appellant, and he said in response to Gottlieb's request to be released, "Willie, you don't have anything much to do with it. Go up and see my attorney, Mr. Anderson." He also testified that he explained the situation to Mr. Anderson and Mr. Anderson prepared a paper based on that conversation. The paper dated July 31, 1952, executed by Mrs. Prevas, Gottlieb and Becker, and witnessed as to all parties by Harry J. Anderson, in fact was not a release of Gottlieb from the lease but was, by its terms, an amendment to the lease of March 7, 1952, merely adding Becker as a lessee, and providing that all of its terms, covenants and conditions should remain in full force and effect, and should bind lessees (Gottlieb and Becker) jointly and severally, and inure in favor of the lessees.

Katherine Prevas in her testimony denied talking over the telephone to the appellee or Silberg, and said that she had never spoken to Gottlieb with reference to the lease since the negotiations leading up to its execution prior to March 7, 1952, and denied that she had talked to Gottlieb and Becker with reference to a release of Gottlieb from the provisions of the lease.

The appellant denied that the appellee and Becker came to see him with reference to the lease and testified that several days before the amendment to the lease he was first informed by Mr. Anderson that Gottlieb had Becker as a partner, whose name it was desired to have added to the lease as a cotenant. He said that he gave this information to his mother and that they both approved adding Becker's name to the lease by way of amendment.

In his deposition taken at Norfolk, Virginia, Adolph Becker, the former partner of the appellee, did not recall a meeting with Katherine Prevas or her speaking the words "don't let it worry you," and said that he remembered talking with the appellant about his going on the lease but did not recall any discussion of releasing the appellee.

Harry J. Anderson, attorney for appellant's mother, testi-

fied that the appellee and Becker came to his office about a week prior to July 31, 1952, when the appellee requested him to amend the lease so that Becker would be added to it. He denied drafting, or the execution, of a release of the appellee and testified that the only paper prepared by him and signed by the parties was the amendment of July 31, 1952.

On the same day Gottlieb and Becker entered into an agreement whereby in consideration of $5,200, including $3,000 deposited with Katherine Prevas by Gottlieb as security for the performance of the lease, paid by Becker to Gottlieb, the parties dissolved their partnership so that Becker should remain the sole owner of the business. This agreement was witnessed by Melvin S. Silberg. The agreement was accompanied by a bill of sale of the same date from Gottlieb to Becker, conveying to Becker all of the assets of the business.

Subsequent to July 31, Gottlieb said he had nothing further to do with the property and thought he was released. The trial court, in its opinion, found no fraud on the part of Mr. Anderson in preparing what Gottlieb thought was a release.

Becker in his deposition stated that he and the appellee were both on the lease before the dissolution of the partnership, and that he thought he and Gottlieb went to see the appellant with reference to a reduction in the rent. The appellant testified that both Becker and Gottlieb, sometime in September or October, 1952, came to see him for that purpose.

After July 31, 1952, the rent continued to be paid promptly until the instalment due December 1, 1953. Shortly thereafter Becker, being in financial difficulty, made an assignment for the benefit of creditors and vacated the premises. The remaining months' rentals, less the $3,000 security deposit, and less credit of rentals received by Mrs. Prevas from several leasings of the premises, after notice by her attorney to Becker and Gottlieb without waiving her rights under the lease as amended, and by way of mitigating her damages for loss of rentals, formed the basis of Mrs. Prevas' claim in the amount of $10,950, with interest from June 1, 1957; which was assigned to the appellant in May 1960 prior to instituting this suit. At the oral argument before us it was conceded by ap-

pellee's counsel that the amount of the appellant's claim was not disputed. The record before us presents a single question necessary for our decision which is, was the written lease surrendered orally.

The law as to oral surrender of leases has been stated by this Court in the case of *Leonard v. Roland Park Apartments Co.*, 161 Md. 451, 454, 157 Atl. 752, as follows:

"The law of this state applicable to the surrender of leases, as stated in *Venable's Syllabus*, 53, is: 'The 3rd section of the Statute of Frauds (*Alex. Stat.* 509, 521), provides that "no leases, estates or interests either of freehold or term of years, or any uncertain interest of, in, to or out of any messuages, manors, lands, tenements or hereditaments shall be assigned, granted or surrendered, unless it be by deed or note in writing, signed by the party so assigning, granting or surrendering the same, or their agents thereto lawfully authorized by writing; or by act or operation of law." It follows that an express surrender must be in writing, and this is true even where the lease itself is not in writing. (*Lammott v. Gist,* 2 H. & G. 433), * * * "It has also been held that where the landlord accepts a verbal surrender and actually accepts or puts another tenant in possession (*Lamar v. McNamee,* 10 G. & J. 116; *Kinsey v. Minnick,* 43 Md. 112; *Boyle v. Peabody Heights Co.,* 46 Md. 627), or himself takes possession (*Dailey v. Grimes,* 27 Md. 440) it is a surrender in law (*Alex. Stat.* 522), but this is doubtful if the original lease was created by deed (*Sm.* L. & T. 230)".' Mr. Tiffany (2 *Landlord and Tenant,* 1313) says the provision of the Statute of Frauds 'has been recognized as operative in at least one state in this country (citing *Lamar v. McNamee,* 10 G. & J. 116; *Lammott v. Gist,* 2 H. & G. 433), while in a few others a provision expressed in substantially similar language has been adopted.' "

In *Lamar v. McNamee*, 10 G. & J. 116, an oral surrender of a lease was held valid because the surrender was an executed one, in that the landlord took possession of the property at the time of the surrender. The Court distinguished *Lammott v. Gist*, 2 H. & G. 433, upon the ground that in that case the parol agreement to surrender was executory, and everything rested upon the agreement, which in itself was inoperative by specific provision of the Statute of Frauds. The distinction made as to oral surrenders is set forth in 78 A.L.R. 2d, *Oral surrender of written lease*, 933, 946, 979. See also *Stedman v. Hill*, 195 Md. 568, 74 A. 2d 41; *Felker v. Richardson* (N. H.), 32 Atl. 830; 37 C.J.S., *Frauds, Statute of,* § 235; 49 Am. Jur., *Statute of Frauds,* § 210; 32 Am. Jur., *Surrender,* §§ 901, 905.

The admissible evidence is insufficient to support a finding that the appellant or his assignor accepted or recognized the claimed oral surrender or that he put another tenant in possession, or that he or she assumed possession, thereby creating a surrender by operation of law. *Leonard v. Roland Park Apartments Co., supra;* cf. *Lamar v. McNamee, supra; Kinsey v. Minnick*, 43 Md. 112. Nor was there any act by them which was incompatible with the continued existence of the landlord and tenant relationship. The checks in payment of the rentals subsequent to July 31 were written on the same printed forms of the partnership used prior to that date, and Mrs. Prevas and her son could not say definitely whether they were signed by Becker or Gottlieb. Both the appellant and his mother testified that they knew nothing of the claimed dissolution of the partnership until after default occurred in the payment of the rent. The fact that the landlord relet the premises for the account of the appellee after default in the payment of the rent and after notice to the appellee did not constitute an acceptance of the leased premises so as to amount to a surrender by operation of law and to take the claimed oral release out of the Statute of Frauds. *Oldewurtel v. Wiesenfeld*, 97 Md. 165, 175, 54 Atl. 969.

Since the release relied upon by the appellee was oral and such a release is within the Statute of Frauds, it was there-

fore void and unenforceable, so that the lease remained in full force and effect. Furthermore, the parol evidence relied upon by the appellee and considered by the trial court to vary the terms of the amendment to the lease and establish an oral release violated the parol evidence rule, which is in conformity with the Statute of Frauds. As pointed out by Chief Judge Brune in *Rinaudo v. Bloom,* 209 Md. 1, 6, 120 A. 2d 184:

"[T]he very term 'parol evidence rule' is really a misnomer because it is not a rule of evidence at all but is a rule of substantive law. *Restatement of Contracts,* Sec. 237; *Williston on Contracts,* Rev. Ed., Vol. 3, Sec. 631; *Corbin on Contracts,* Sec. 573; *Wigmore on Evidence,* 3d Ed., Sec. 2400. As Professor Wigmore states: 'It does not exclude certain data because they are for one reason or another untrustworthy or undesirable means of evidencing some fact to be proved. * * * What the rule does is to declare that certain kinds of fact are legally ineffective in the substantive law; and this of course (like any other ruling of substantive law) results in forbidding the fact to be proved at all.' Therefore, if the parol evidence rule is applicable, no evidence of any kind can be introduced to change the writing."

The appellee argued that the appellant and his assignor, by their conduct were estopped from invoking the Statute of Frauds. We think the appellee has shown no basis for claiming estoppel. That he thought he was released when he signed the amendment of July 31, 1952, is, in the absence of fraud (and the trial court found none), no defense to him because he is bound by the paper he signed. Possessing the capacity to understand it as shown by the record, he is presumed to have read it before signing it and understood its contents. *Vincent v. Palmer,* 179 Md. 365, 375, 19 A. 2d 183. Moreover, the doctrine of estoppel is invoked to prevent the statute from becoming an instrument of fraud. But, a mere breach of a promise, assuming there was one made, which the law does not regard as binding cannot amount to fraud, nor can

it render enforceable a promise which was not binding when made.

We think the trial judge was in error in his findings of fact and conclusions of law. Judgment should have been entered for the appellant for the full amount of his claim of $10,950, plus interest to the date of judgment amounting to $1,065.25, making a total of $12,015.25.

> *Judgment reversed, and judgment entered in favor of the appellant for $12,015.25, with interest from October 11, 1961, with costs below and on this appeal to appellant.*