STATE OF MARYLAND, use of ISABELLA HAMELIN, and JOHN NICHOLAS HAMELIN and THEODORE HAMELIN, by their next friend, ISABELLA HAMELIN *vs.* WILLIAM T. MALSTER and WILLIAM B. REANEY, trading as MALSTER & REANEY.

*Action for Damages on account of Death of an Employé caused by Injuries received by him in the Course of his Employment—Risks of Employés—Duty of Employers—Burden of Proof of Negligence—Cost of Transcript of Record.*

H., an employé of M. & R., bridge builders, in the course of his employment as a laborer working on Calvert street bridge in the City of Baltimore, received injuries from a fall, which resulted in his death. In an action against M. & R. to recover damages, it appeared, that the accident was occasioned by the want of ordinary care and prudence on the part of H. and his fellow-workmen; and that H. contributed to his misfortune by his own want of caution for his safety; and that there was no evidence of want of reasona-

State, use of Hamlin, *et al. vs.* Malster & Reaney.

ble care and diligence on the part of M. & R. in procuring for the work suitable machinery and appliances, and competent superintendents and co-laborers; and that H. was not exposed to risks beyond those incident to the employment, and which were in contemplation at the time of the contract of service. HELD : ·

That there was no sufficient evidence of negligence on the part of M. & R. (the whole *onus* of proof being on the plaintiffs,) to sustain the action against them.

Where, by agreement, a large amount of matter was unnecessarily incorporated in the record sent to this Court, in disregard of the 5th Rule, it was adjudged that each party pay one-half of the cost of printing the transcrpit.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*——At the trial, after the testimony, summarized in the opinion, had been given, the plaintiff offered the following prayers :

1. That if the jury shall find from the evidence, that Theodore Hamelin, deceased, was related to the equitable plaintiffs, as stated in the declaration, and was killed by falling from a great height, while working as a laborer for the defendants, in the construction of a bridge, and that his fall and death directly resulted from, and was caused by, the failure of the said defendants to provide such structures and appliances for securing the safety of persons engaged in the work aforesaid, as would have been provided by ordinarily prudent and careful persons in the circumstances of the said defendants, as disclosed by all the evidence in the cause, then their verdict must be for the plaintiff, unless they shall further find that the said Hamelin was guilty of want of ordinary care and regard for his own safety, at the time of his injury, and thereby contributed to produce it.

2. That if the jury shall find from the evidence, that Theodore Hamelin, deceased, was related to the equitable plaintiffs, as stated in the declaration, and was killed by falling from a great height, while working as a laborer for the defendants in the construction of a bridge, and that the manner of constructing the said bridge involved unnecessary risk to the persons therein employed, to which risks ordinarily prudent and careful employers would not have exposed their workmen under the circumstances of the defendants, as disclosed by all the evidence in the cause, and that the said manner of construction was known to and approved by the defendants; and that the fall and death of the said Hamelin was directly caused by the risks thereby incurred, then their verdict must be for the plaintiff, unless they shall further find, that the said Hamelin entered or continued in the employment of the said defendants with notice of and acquiescence in the above described risks as attending on his said work, and compensated by such wages as they may find he received, or else that he contributed to the said accident causing his death by a want of ordinary care and prudence in preserving himself from danger.

3. That if the jury shall find from the evidence that the defendants were, on the 5th of September, 1879, in possession of certain fixed property, to wit: a scaffolding on the line of Calvert street, in Baltimore City, and that the said scaffolding was traversed by a large number of persons with the sanction of the said defendants, and used by the said persons in the prosecution of works under the supervision and control of the said defendants, and with the nature of which the defendants were well acquainted; and if they shall further find, that the said scaffolding was suffered and permitted by the said defendants to be and continue so constructed and so destitute of ordinary and proper appliances for securing the safety of persons so traversing and using it as aforesaid, that the

same became and was a source of peril to the said persons, and that Theodore Hamelin, deceased, being related to the equitable plaintiffs as stated in the declaration, if they shall find that he was so related, was, on the day and year aforesaid, killed while using the said scaffolding, with the approval and under the sanction and direction of the defendants, and that his death was directly caused by the said unsafe condition of the said scaffolding, and not by any want of ordinary care and prudence, or regard for his own safety on the part of the said Hamelin thereunto contributing, their verdict must be for the plaintiff.

4. That if the jury shall find from the evidence that the death of Theodore Hamelin, deceased, was directly caused by the wrongful acts or defaults of defendants, described in either the first, second or third prayers of the plaintiff, then the burden of proof is upon the said defendants to satisfy them that the said deceased was guilty of want of ordinary care and prudence, and regard to his own safety, which contributed to cause his death, and in determining whether he was so guilty, the jury will consider the ordinary instinct of self-preservation by which the said deceased is presumed to have been actuated, his intelligence and grade of employment, the length of time which they may find he had been engaged in the work in which he was killed, or in any similar work, and what, if any, familiarity they may find he had with the risks, generally attendant upon similar employment, and the proper means of avoiding them.

5. That in determining whether said Theodore Hamelin, deceased, so entered or continued in the employment of the defendants with knowledge of the risks to which that employment subjected him, as is in the plaintiff's second prayer described, the jury may consider the grade of labor for which he was engaged, the rate of wages he received therefor, the experience which they may find he had of the same or similar work, and how far the risks

to which he was subjected while working for the defendants were necessary incidents to such work, or to what extent they might have been avoided by ordinary and reasonable precautions on the part of the said defendants.

6. If, under the Court's instructions, the jury shall find for the plaintiff, then in assessing the damages they are to estimate the reasonable probabilities of the life of the deceased, Theodore Hamelin, and give the equitable plaintiffs such pecuniary damages, not only for past losses, but for such prospective injury as the jury may find that they have suffered, or will suffer, as the direct consequence of the death of the said Hamelin ; that for his children these prospective damages may be estimated to their majority, and as to the widow, to such probability of life as the jury may find reasonable under the circumstances.

7. If the jury shall find that Theodore Hamelin, deceased, was related to the equitable plaintiffs, as stated in the declaration, and that he was killed by falling from a great height while working as a laborer for the defendants in the construction of a bridge, and that his fall and death were caused by the slipping of a plank, upon which he stood on some greased rails, and would not have occurred had a longer plank been used or the rails removed ; and that certain other employés of the said defendants, without any agency of the said Hamelin therein, selected the said plank, and failed to remove the said rails ; and that the said other employés were not reasonably competent and skilful workmen to be employed in such work, unless placed under the immediate supervision and control of a mechanic skilled therein, whose orders they were bound to obey, or such as ordinarily careful and prudent bridge builders would have employed otherwise, and that no such supervision and control was provided by the said defendants ; and that reasonably competent and experienced workmen, acting with ordinary care and prudence, would have used a longer plank or removed the greased rails,

then their verdict, considering all the evidence in the cause, must be for the plaintiff, unless they shall further find that the said Theodore Hamelin, by standing, under all the circumstances of the case, upon such a plank so supported, was guilty of want of ordinary care and prudence in providing for his own safety ; and the burden of proof is upon the defendants to satisfy them that he was so guilty.

8. The jury are instructed that in determining whether Theodore Hamelin, deceased, was guilty of want of ordinary care and prudence in providing for his own safety, by standing upon the plank mentioned in the plaintiff's seventh prayer they may consider the following facts, if they shall find them from the evidence, namely : that he went there by peremptory and unqualified command of the defendants' foreman ; that the accident happened before he had time to examine the size and situation of the plank with any care ; that it was covered with his fellow-workmen when he reached it ; that he had never worked upon a bridge previously to his employment by the defendants, and during that had been habitually employed in a different portion of the work ; that he had never been warned of the danger of using a short plank, or of not removing the rails, and that these had not been always removed at corresponding periods of the previous work ; and finally, that it was the custom of bridge-builders to immediately discharge any workman who manifested unusual timidity or solicitude for his safety, and that the said Hamelin was out of his usual work, and had a family to support.

9. The jury are instructed that so much of the testimony of the witnesses, Curran, Bollman, Ramsey and Dudrow, as tends to show that the method of constructing the bridge upon which Theodore Hamelin was working at the time of his death, was the one usual among builders of similar bridges, is to be considered by them only in determining whether the said method was, or was not, a rea-

sonably safe and prudent one ; and if they shall be satisfied from all the evidence in the case, that the said method involved unnecessary and unreasonable risks to the defendants' workmen, then the fact of its general use among bridge-builders, even if they shall find such fact, in the absence of all evidence of knowledge thereof by the said Theodore Hamelin, is irrelevant to the issues joined in this case, and must not be considered in determining their verdict.

10. The jury are instructed that so much of the evidence of the witness, Curran, as relates to statements alleged to have been made by Theodore Hamelin, deceased, when engaged by the said Curran, on behalf of the defendants, is to be considered by them only in determining what were the nature of the said Hamelin's employment, and the defendants' acquaintance with his capacities as a workman, and not as proving, or tending to prove, the facts so alleged to have been stated by the said Hamelin.

The defendants offered three prayers, stated in the opinion.

The Court (BROWN, J.) rejected all the prayers of the plaintiff, except the sixth, which was conceded by the defendants, and granted all the prayers of the defendants. The plaintiff excepted, and the verdict and judgment being for the defendants, the plaintiff appealed.

The cause was argued before BARTOL, C. J., GRASON, ALVEY, ROBINSON, IRVING and MAGRUDER, J.

*W. H. Harris,* and *C. J. Bonaparte,* for the appellant.

*First.* That there was sufficient evidence of negligence on the part of the defendants, before the jury, for them to find that the defendants had violated their legal obligations, as employers, to the deceased, Theodore Hamelin.

*Second.* That there was before the jury, no evidence authorizing the Court to declare, as a matter of law, that the deceased had directly contributed, by his own negligence, to the happening of the accident which resulted in his death.

*Third.* That even if there was evidence tending to show such facts as would constitute contributory negligence in law, the Court should have limited its action to instructing the jury that such would be the effect of these facts, if found by them, leaving to the jury to find them from the evidence.

*Fourth.* That the mere negligence of Hamelin's co-employés, if contributing to his injury, was improperly recognized by the Court as constituting a bar to the action.

*Fifth.* That the conditions of the defendants' liability in this action were correctly stated in the plaintiff's *first, second, third* and *seventh* prayers ; and that there was evidence before the jury, and contained in the record, to sustain all the hypotheses of those prayers.

*Sixth.* That the facts enumerated in the plaintiff's *fourth, fifth* and *eighth* prayers were proper to be considered by the jury upon the questions of contributory negligence, and voluntary assumption of risk on the part of the deceased, and that there is evidence in the record, from which the jury might find all these facts.

*Seventh.* That the evidence referred to in the plaintiff's *ninth* and *tenth* prayers was admissible for the purposes stated in those prayers only, and should not have been considered by the jury for any other purpose.

1 and 5. An employer is liable for accidents to his workmen, which have been caused by either—

*A.* His negligence in failing to employ reasonably sufficient and safe material, utensils or appliances, for the work in which the injured workman was engaged. *Fazenbaker's Case,* 39 *Md.,* 156 ; *Moran's Case,* 44 *Md.,* 283 ;

*Hogan's Case,* 45 *Md.,* 229; *Stricker's Case,* 51 *Md.,* 47, 69, 70; *Holmes vs. Clark,* 7 *Hurls. & Norman,* 942; *Wood, Master and Servant,* sec. 705.

*B.* His negligence in failing to provide reasonably competent and skilful fellow-workmen to assist in the said work. *Moran's Case, supra,* 292, 294; *Smith, Master and Servant,* 196, 198; *Shearman & Redfield on Negligence,* 118; *Laning vs. N. Y. C. Ry.,* 49 *New York,* 521, 528; *Chicago Ry. vs. Harney,* 28 *Ind.,* 38; *Chicago Ry. vs. Sweet,* 43 *Ill.,* 197, 202; *Faulkner vs. Erie Ry.,* 49 *Barb.,* 324, 328; *Curley vs. Harris,* 11 *Allen,* 121.

*C.* His negligence in failing to discharge, with reasonable care, any duty, of superintendence or otherwise, which he may personally assume. *Roberts vs. Smith,* 2 *Hurls. & Norman,* 212; *Ashworth vs. Stanwix,* 1 *Best & Smith,* 407, and 3 *El. & El.,* 701; *Sword vs. Cameron,* 3 *Macq.,* 289, 290; *Dixon vs. Rankin,* 3 *Macq.,* 290, 310, 311; *Connolly vs. Pollion,* 41 *Barb.,* 369.

And he is also liable when—

*D.* The accident, although happening to his employé, is the consequence of a nuisance on his premises. *Deford's Case,* 30 *Md.,* 204, 205; *Rapson vs. Cubitt,* 9 *Mees. & Wels.,* 713; *Laugher vs. Poynter,* 5 *Barn. & Cres.,* 560, 576; *Randelston vs. Murray,* 3 *N. & P.,* 239.

2. The question of negligence is always one of fact, for the jury, unless there should appear from the evidence some one salient and decisive fact or circumstance leading, if established or admitted to be true, irresistibly to the conclusion that the plaintiff, or deceased, was partially responsible for the accident complained of in the suit. When the question of want of ordinary and reasonable care and prudence, is one to be decided by a consideration of numerous facts, and the comparison of numerous inferences, it is a clear invasion of the jury's province for the Court to assume its decision. *Price's Case,* 29 *Md.,* 420, 440; *Gies' Case,* 31 *Md.,* 357, 365;

*Fitzpatrick's Case,* 35 *Md.,* 32, 44, 45 ; *McMahon's Case,* 39 *Md.,* 438.

3. Under no circumstances, can the Court properly decide what is " the undisputed evidence " or what " appears from the undisputed evidence," unless this inference be one of law. " No matter how clear and satisfactory the proof * * * * to establish " a fact " the Court could not assume that it took place, as it would be an invasion of the rights of the jury." In all of the cases which have established the right of the Court to declare certain facts, contributory negligence, as matter of law, those facts have been enumerated by the Court in its instructions, and the jury entrusted with the duty of finding them, however clearly they might be indicated by the evidence. *Gaither vs. Martin,* 3 *Md.,* 148 ; *Dougherty's Case,* 36 *Md.,* 366 ; *Lewis' Case,* 38 *Md.,* 588.

4. As between an employer and any other person than one of his workmen, the negligence of another workman would establish a right of action against the employer on behalf of the person injured through such negligence, upon the principles of *respondeat superior* and *qui facit per alium, facit per se.*

As between the master and one of the workmen, this negligence of the co-employé, alone, does not establish a legal liability. The workman must go farther, and prove, not only that his fellow-workman was negligent, but that the master ought reasonably to have anticipated such want of ordinary care and skill, on the latter's part, because he was not reasonably competent to discharge the duty assigned him.

This principle is, in the defendant's third prayer, confused with the utterly untenable proposition that, the negligence of the co-employé, *discharges* the master's liability.

In other words, that a man who employed incompetent workmen is relieved from liability for accidents caused by

the very want of skill against which he has failed to provide.

Upon no principle of law or reason can a workman be held responsible for the negligence of his fellow-workmen whom he has had no agency in selecting, and over whom he has no control.

Whenever the negligence of a third person has been held imputable to a plaintiff, so as to defeat his right of action, this third person has stood, towards him, in the relation either of an agent or a representative.

It is confidently submitted that the proposition here controverted will be found as wholly unsupported by authority, as it is unreasonable and inequitable, in itself. *Burrows vs. March Gas and Coke Co., L. R.,* 5 *Exchr.,* 67 ; *Sheridan vs. Brooklyn and N. Ry.,* 36 *N. Y.,* 39 ; *Mott vs. Hudson River Ry.,* 8 *Barb.,* 345 ; *Cayzer vs. Taylor,* 10 *Gray,* 274 ; *Am. Law Review, (N. S.,) Nov.* 1880, *page* 771.

6. Negligence consists in " the want of that measure of care and prudence which an ordinarily careful and prudent person would exercise " under the circumstances of the case. *All* of these circumstances must, therefore, be considered by the jury, and the burden of establishing negligence is always upon the party asserting its existence, since " that a party will act with due care, both with reference to his own safety and the safety of others, is a natural presumption to be indulged in all cases, until overcome by proof to the contrary." " The ordinary instinct of self-preservation, by which the deceased is presumed to have been actuated," has been expressly recognized by the decisions of this Court as proper to influence the decision of a jury upon the question of contributory negligence. *Geis' Case, supra,* 364 ; *Shearman & Redfield, Negligence,* 128, 129 ; *Gladman's Case,* 15 *Wallace,* 401, 408 ; *Frech's Case,* 39 *Md.,* 574 ; *Poe, Pleading and Practice,* 377 ; *Grizzle vs. Frost,* 3 *Foster & Finlason,* 623—

4–5; *Holmes vs. Clark, supra,* 949; *Mellors vs. Shaw,* 1 *Best & Smith,* 444–7; *Brittain vs. G. W. C. Co., L. R.,* 7 *Exch'r,* 138; *Hayden.vs. Smithville Mf'g Co.,* 29 *Conn.,* 557; *Connolly vs. Pollion, supra,* 368–9; *O'Byrne vs. Burn,* 3 *Macq.,* 294; *Kuhns vs. Cordage Co.,* 102 *Mass.,* 572; *Railway Co. vs. Fort,* 17 *Wallace,* 558; *Addison on Torts,* 489, *Ed.* 1876; *Freyer's Case,* 30 *Md.,* 47; *McMahon's Case, supra,* 439; *Reed vs. Northfield,* 13 *Pickering,* 94; *Whittaker vs. West Boylston,* 97 *Mass.,* 273.

*J. E. Semmes* and *S. T. Wallis,* for the appellees.

In the consideration of the plaintiff's first prayer, it is necessary to review the facts, in order to ascertain if at all, the defendants have broken the rules established by the decisions in Maryland, as to the duty of the employer to the employé.

There is no attempt on the part of the plaintiff to show any negligence in the selection of competent employés, and there can be no doubt of Curran's competency. Dudrow, who acted as leader of the gang, was a man of 18 years' experience, and his brother, working in the same gang, was, as testified by Mr. Bollman, a man whom he would have trusted as foreman. Hamelin himself, was more than an ordinary laborer, he had been in charge of a wrecking train, and had been accustomed to work aloft as a sailor. It is not necessary to consider this portion of the duty of the defendants. There is not a particle of evidence to show that there was any neglect of it, on the contrary, the evidence proves that they were more than ordinarily careful in having competent men in their employment. Now as the second part of the defendants' duty, to use reasonable care in the selection of their machinery and appliances, and not to increase the risks incident to the employment, and in contemplation at the time of the contract of service. In this case there is no question of complicated machinery—the only materials

were boards to form a shifting platform, to be placed by the men as they should require the use of scaffolding—the object being to place certain segments of iron in position, which being once placed, the platform is moved to the next section of the bridge when similar work is done. The testimony of Mr. Curran is, that he purchased for this purpose, 8000 feet of boards or joist, 16 feet long, 12 inches wide, and 3 inches thick. The testimony of the witnesses, both for the plaintiff and defendants is, that these joists or boards were lying about the bridge, and ready for use if required by the men. There is no evidence to show that there was any scarcity of boards, of proper length, or any restriction in the use, or that the dangers incident at the time of service had been increased, for when Mr. Hamelin, the decedent, was employed, the men were engaged as one gang—in placing these segments in position, they used the same means and appliances furnished by the defendants, and used them successfully, Mr. H. participating in the work on three or four occasions, and afterwards assisting in turning other segments over, when required to give a helping hand. The accident was caused not by using the appliances furnished in the manner and mode shown them, but by a failure on part of Hamelin and his co-laborers, to follow the directions given them.

As to the effect on the right to recover, where as in this case the deceased was a man of intelligence, capable of judging the dangers to which he was exposed, where his opportunities were not only equal to, but greater than those of his master of ascertaining these dangers, and where he continues in their employment without objection.

The implied contract as is affirmed in the case of Stricker, in the relation of master and servant is, that in accepting service, the latter contracts that he will assume all such risks, and encounter all such perils in the course

of his employment, as are natural and incident thereto, and arise from causes or sources that are open, visible, notorious and constant, and not concealed, latent or temporary. *Wharton on Negligence, secs.* 214 *and* 217; *Wood's Master and Servant, pp.* 698, 680, *and p.* 737, *sec.* 363; *Seymour vs. Maddox,* 16 *Add. & Ell.,* (*Q. B.,*) 326, (71 *Eng. Com. Law,* 326;) *Stricker,* 51 *Md.,* 71; *Woodward's Case,* 41 *Md.,* 278; *Hayden vs. Smithfield,* 29 *Conn.,* 557; *Baylor vs. D. L. W. R.,* 40 *N. J.,* 24; (*Hughes vs. W. & St. Paul R. R., Minn.,* 1880, 10 *Reporter,* 567.)

The principle laid down in the above cases is particularly applicable in this case. The testimony of McDonald, the plaintiff's own witness, establishes beyond question that the whole work was perfectly open, visible, notorious and constant; that he had ample opportunity of discovering whatever danger there might be, and preventing and avoiding it. *Sullivan vs. Inden. M. Co.,* 113 *Mass.,* 397, *Davis vs. Milwaukee R. R. Co.,* 20 *Mich.,* 126, 127; *Note* 5, 3 *Am. R.,* at *p.* 148; *Keeghan vs. Kavaeway,* 62 *Mo.,* 232; 123 *Mass.,* 544; *W. & W. R. J. Co. vs. Ashby,* 84 *Ill.,* 434; *Richardson vs. Cooper,* 88 *Ill.,* 275; *B. P. R. R. Co. vs. State, use Stansbury,* 54 *Md.,* 648; *Burn's Case,* 54 *Md.,* 113; *Foy's Case,* 47 *Md.,* 76; *Stricker's Case,* 51 *Md.,* 67; *Lewis' Case,* 38 *Md.,* 599; *Owen vs. R. R.,* 1 *Lous.,* 110; *Hackett vs. Middlesex Mass. Co.,* 101 *Mass.,* 103.

The record abounds in evidence showing that by the exercise of the most common and ordinary prudence the accident could have been avoided. The method of doing the work had been shown the deceased. The accident was not the result of imperfect machinery furnished by the defendants or through a latent defect, and though it does not appear that he personally participated in the selection of the short board used on this occasion, still he was in the position of one, who, as the Court of Appeals say in *Stricker's Case,* had knowledge; had seen the method

of doing the work, and had participated in it—it is presumed that he knew the danger he exposed himself to. If the method of doing the work was dangerous, his continuing in it, when such danger was open and obvious, was an act of contributory negligence which would prevent his recovery.

If on the other hand, the method of doing the work as shown by Curran was not dangerous, but the danger occurred by reason of the neglect to observe and follow the instructions; Hamelin, as the proof shows, being one of the gang shown how to do the work; then it was his duty to see that the platform was a proper one, and properly placed, and his placing himself upon it, without having done so, would preclude him from recovery. *Guppen vs. N. Y. Central*, 40 *N. Y.*, 34, 44; *Stricker*, 51 *Md.*, 47; *Y. W. & W. Ry. Co. vs. Black*, 88 *Ill.*, 112.

It may be contended that in the hurry of the moment he might have neglected this precaution, but there is no evidence that he was hurried, and even if he were so, it does not excuse him from taking such a reasonable precaution. *Baylor vs. The Del., Lack. & W. B. R. Co.* 40 *N. J.*, 24. The defendants' second prayer was properly granted.

The defendants' third prayer should have been granted upon the principles laid down by a long list of decisions in this and other States, namely, that an employé is not entitled to recover where the accident was the result of his negligence and that of his fellow-servants, when due care has been exercised in their selection. *Wonder's Case*, 32 *Md.*, 411; *Hanrathy's Case*, 46 *Md.*, 280,—and the cases quoted.

Were each employé allowed to recover for any injury caused by reason of the negligence of a fellow-servant, it would remove one of the principal barriers to the happening of accidents due to this cause.

This rule is founded on the expediency of throwing the risk upon those who can best guard against it, and the

reasons for it are expressed in *Farwell vs. The Boston & Worcester Railway Corporation,* 4 *Met.,* 49–59.

There can be no question that the accident was directly caused by the negligence of Hamelin and his fellow-workmen in not following the method shown them by Curran, therefore the third prayer of the defendants was properly granted.

ALVEY, J., delivered the opinion of the Court.

This action was brought to recover for the death of Theodore Hamelin, alleged to have been caused by the negligence of the defendants.

The defendants are bridge-builders, and were, at the time of the accident complained of, engaged in constructing what is known as the Calvert street bridge, over Jones' Falls, in the City of Baltimore. The bridge is a heavy iron structure, and, in putting it together, it required strong manual force as well as the use of mechanical appliances. The deceased was employed by the defendants as one of the laborers in the construction of this bridge at the time of his death.

With the declaration was filed a statement of the particulars of the claim, and the grounds upon which it was made. In that statement, it it alleged that the accident was " *caused by the negligence* of the defendants, in selecting one Dudrow, an unfit person for such appointment, to be a foreman in said work; and in failing to provide sufficient appliances to secure the safety of their workmen; and in the general control and management of the said work by themselves; or by one or more of the causes aforesaid." The case was tried upon the general issue, that the defendants did not commit the wrong alleged. And, under the instruction of the Court, the verdict was for the defendants.

The evidence shows that the deceased was not an experienced bridge-builder, but that his vocation in life had

been that of a mariner. He was employed as an ordinary laborer, at ordinary wages, and had been at work on the bridge about two weeks previous to his death. He was at work under Curran, the foreman or superintendent of the work, who was an experienced and skilled bridge-builder; the defendants not being constantly at the work themselves, and not being there upon the occasion of the accident. There were two other men employed at the time on the work, named Dudrow, who were skilled workmen, and one of them, Parker Dudrow, was acting as leader or director of the gang of hands engaged in the particular work, in the doing of which the accident occurred; though, it appears, he had no special delegation of authority as foreman. In regard to these facts there is no controversy whatever; they are proven mostly by the evidence adduced on the part of the plaintiff.

The way in which the work was done, in the doing of which the accident occurred, as shown by the evidence, was this: The arches of the bridge were constructed of heavy iron segments, of about 3600 lbs. each, and these segments were placed in position in the arches by the use of a derrick. But in order to put them in position to be raised by the derrick, they had to be moved along a gangway, in the centre of the scaffolding or frame work of the bridge, on a roller or buggy, as it is called, and thence to the edge of the scaffolding on greased iron bars or rails, where the segments were to be raised and placed in the arch. There was no flooring on this scaffolding or frame work, but loose planks were provided and used to make foot-ways for the men over the scaffolding, to enable them to work. It is shown that there were some eight thousand feet of these planks provided and placed upon the scaffolding for this use; each plank being 16 feet long, 12 inches wide, and 3 inches thick. When the segments were pushed to the end of the greased rails, they were then tilted or canted from the ends of the rails to put

them in position to be raised by the derrick : and this was done by manual force.  In order to effect this move, a plank was placed in front of the segment upon which the men could stand while engaged in canting the segment. This plank should have rested flatly on the cross timbers ; but in canting the segment upon the occasion when the accident happened, it was allowed to rest upon the greased rails.  In this particular instance, moreover, the plank used had been sawn short some four feet, and it was too short for the purpose, being only ten or twelve feet long. Some fourteen of the segments had been put in place, and the same mode of proceeding had been adopted in reference to them all, except in the use of the short plank, and the allowing it to rest on the greased rails instead of the timbers.  In placing the first two or three segments in position, Curran gave personal supervision, and directed, in those instances, the withdrawal of the greased rails after the first tilt therefrom of the segments, and that the plank be placed on the cross timbers.  He gave no special direction, however, that this same precaution should be observed in all subsequent cases of placing the segments. In placing these first segments in position, Hamelin, the deceased, was present and co-operated as one of the laborers ; but afterwards, the hands were divided into two gangs,—the one being placed at the derrick, and the other assigned to the moving and handling the segments on the scaffolding ; and Hamelin was placed with the gang at the derrick, under the immediate direction of Curran.  When the fifteenth segment was moved to the place where it was to be tilted or canted the second time, in order to be put in position to be moved by the derrick, call was made for assistance, and Hamelin was directed by Curran to go and give assistance in turning the segment; and when he reached the scene of operation, the short plank had been placed in position in front of the segment, resting upon the greased rails, and the men had

taken their positions thereon, preparatory to a united effort to turn the segment into position. He took position also on the plank; and in the lateral pressure upon the plank in the effort to turn the segment, the plank slipped upon the rails, and several of the workmen were precipitated to the falls below, a distance of about forty feet, and among these was Hamelin, who came to his death thereby.

With respect to these facts there is no conflict or dispute whatever; and it is therefore clear that the immediate cause of the accident was the incautious use of the short plank on the greased rails, while making the effort to turn or cant the segment for the derrick, instead of a plank of proper length resting solidly on the timbers of the scaffolding or frame work of the bridge.

Upon the whole evidence, the Court below was asked by the plaintiff to instruct the jury in accordance with ten prayers propounded; but the Court refused them all, and, at the instance of the defendants, instructed the jury, 1st, That there was no evidence in the cause of any such negligence on the part of the defendants in discharge of their legal obligations to the deceased, as would entitle the plaintiff to recover under the proceedings; 2nd, That, upon the undisputed evidence, it was apparent that the deceased directly contributed to the happening of the accident, by his own want of ordinary care and prudence; and, 3rd, That, upon the undisputed evidence, it was apparent that the accident was the direct result of the want of ordinary care and prudence on the part of the deceased and his fellow-workmen, in doing the work on which the accident occurred; and therefore the plaintiff could not recover.

These propositions all resolve themselves into this, that there was no sufficient evidence of negligence on the part of the defendants, to afford the right of action against them, though there was plain and undisputed evidence of the want of ordinary care and prudence on the part of

the deceased, and his co-laborers.   And in reviewing this. ruling of the Court below, and determining whether it be correct or not, we must first make reference to the settled principles of law applicable to the case.

All the cases, English and American, fully agree in the general proposition, that where a servant engages to. perform certain service for compensation, it becomes an implied part of the contract, that he will take upon himself, as between himself and the employer, all the natural risks and perils incident to the work, whatever the nature of that work may be; and if the nature of the work be hazardous, involving the necessity for great care and caution on the part of the servant for his own protection against injury, the presumption of law is, that he fully understood the nature of the work, and that his compensation was fixed with reference to the risks and perils of the service undertaken by him.   And if, from the nature of the service to be performed, the servant must or may be exposed to risk of injury from the negligence of other servants of the same employer, engaged in the same common employment, though it may be in different grades or departments of it, such risk is one of the natural perils of the service which the servant takes upon himself, as between himself and the employer, and therefore, for any injury sustained from such cause, that is to say, the negligence of fellow-servants, he can have no right of action against the master.   The servant, however, does not engage against the negligence or malfeasance of the master himself; and hence the master is bound to use due and reasonable diligence, having respect to the nature of the service, to provide the proper materials, appliances, and instrumentalities, for doing the work, and also to use due diligence and care in the selection and employment of competent and careful fellow-servants for the particular work or service to be performed.   Nor is the master justified in knowingly or negligently exposing the servant to.

any extraordinary or unreasonable peril in the course of the employment, against which the servant, from the want of knowledge, skill, or physical ability, could not, by the use of ordinary care and prudence, under the circumstances of the case, guard himself. For the violation of duty in these respects by the master, whereby injury is sustained by the servant, the master is justly liable. These principles are laid down in a great number of adjudged cases, and have been explicitly enunciated by this Court. *Wonder's Case,* 32 *Md.,* 411 ; *Hanrathy's Case,* 46 *Md.,* 280 ; *Hutchinson vs. Railw. Co.,* 5 *Exch.,* 343 ; *Wigmore vs. Jay, Id.,* 354 ; *Roberts vs. Smith,* 2 *H. & N.,* 213 ; *Williams vs. Clough,* 3 *H. & N.,* 258 ; *Hough vs. Railw. Co.,* 100 *U. S.,* 213, 217 ; *Whart. on Neg., secs.* 209 to 217, and *Cooley on Torts, pp.* 543, 545, where the cases have been carefully collected and the results of them stated.

All the cases agree in holding that there is no obligation on the part of the master to give his own personal supervision to the execution of the work ; but that he may delegate that power to a superintendent or foreman. And it is held by all the English cases, and by a decided preponderance of those of this country, that such superintendent or foreman is a fellow-servant within the rule, and that the omission or negligence of such superintendent or foreman is among the incidents of the service, and the risk of which the servant assumes upon himself, as between himself and the master, when he enters the employment. Consequently, for any injury to the servant, caused by the omission or neglect of the superintendent or foreman, the master is not liable to the servant, provided the master has not been negligent or careless in the selection of such foreman or superintendent. It is said by Judge Cooley, in his work on *Torts,* in treating of the subject, at page 544, "that it cannot be disputed that the negligence of a servant of one grade is as much one of the risks of the business as the negligence

of a servant of any other; and it seems.impossible there-
fore to hold that the servant contracts.to run the risks
of negligent acts or omissions on the part of one class
of servants and not those of another class." The cases
in which it has. been held that the superintendent or
manager is a fellow-servant within the rule which exon-
erates the master, are quite numerous, and it is not neces-
sary that we should do more than give reference to some of
them. *Wonder's Case,* 32 *Md.,* 411; *Wigmore vs. Jay,* 5
*Exch.,* 354; *Wiggett vs. Fox,* 11 *Exch.,* 832; *Brown vs.
Acringon Cotton Co.,* 3 *H. & Colt,* 513; *Searle vs. Lind-
say,* 11 *C. B. (N. S.,)* 429; *Lovegrove vs. Railw. Co., and
Gallagher vs. Piper,* 16 *C. B. (N. S.,)* 669; *Murphy
vs. Smith,* 19 *C. B. (N. S.,)* 361; *Feltham vs. England,
L. R.,* 2 *Q. B.,* 32; *Howell vs. Steele Co., L. R.,* 10
*Q. B.,* 62; *Warner vs. Erie R. Co.,* 39 *N. Y.,* 468;
*Malone vs. Hathaway,* 64 *N. Y.,* 5; *Lawler vs. Railw.
Co.,* 62 *Me.,* 463; *Blake vs. Railw. Co.,* 70 *Me.,* 60.

To the general rule, however, there is this qualification or
exceptance, that where the middle-man or superintendent
is entrusted with the discharge of the duties incumbent
upon the master, as between the latter and the servant,
there the master may be liable for the omissions or neglect
of the manager or superintendent in respect to those duties.
If the master relinquishes all supervision of the work,
and entrusts not only the supervision and direction of
the work, but the selection and employment of laborers,
and the procuring of materials, machinery, and other
instrumentalities necessary for the service, to the judg-
ment and discretion of a manager or superintendent,
in such case, the latter becomes a vice-principal, and
for his omissions or negligence in the discharge of those
duties, the principal will be liable. *Murphy vs. Smith,*
19 *C. B. (N. S.,)* 361; *Malone vs. Hathaway,* 64 *N.
Y.,* 5; *Whart. on Neg. (1st Ed.,) sec.* 229. As an
example of this exception to or qualification of the gene-

ral rule, we may refer to the case of *Moran,* 44 *Md.,* 283, where the power to select and purchase a locomotive engine was delegated by the defendants to their general superintendent and their master of machinery, and for the negligence of those agents in the discharge of that duty, the defendants were held liable for the death of a fireman employed on the engine so purchased. Many other instances might be referred to if it were necessary.

Now, with these well established legal principles and distinctions in view, we may proceed to a more direct consideration of the case, with reference to the facts in proof. And, in the first place, it is important to bear in mind that the whole *onus* of proof is on the plaintiff. It is incumbent upon him to show affirmatively all the elements of the right to recover. Unless the Court can see that there is such evidence in the cause as will *fairly* support a verdict, if the jury should find it to be credible and proper to be made the basis of their finding, it becomes an imperative duty of the Court to instruct the jury to find their verdict for the defendant. Conjecture or irrational speculation by the jury, as to conclusions of fact, should not be allowed ; and unless there be such proof as would justify a deduction of a *rational conclusion* as to the existence of the essential facts to entitle the plaintiff to recover, the instruction should be for the defendant. Otherwise there would be no certainty attained, and often the grossest injustice would be inflicted, in the trial by jury. In deciding the question whether there be any evidence *legally* sufficient to be submitted to the jury, or whether there be evidence from which a rational conclusion of the fact or facts sought to be established may be deduced, the Court is not called upon to decide simply a question of fact; but the question of the *legal* sufficiency of the evidence is one of law, and of which the Court is the exclusive judge ; and the decision of which question, when raised, is preliminary to the right of the jury to

pass upon the sufficiency of the evidence in point of fact. This is a well settled principle in the trial by jury, and has been too often applied by this Court to be an open question at this day. *Cole vs. Hebb,* 7 *G. & J.,* 20, 29, 36, 40.

The argument at bar, on the part of the plaintiff, was mainly directed to show that there was evidence of the essential facts, legally sufficient to be submitted to the jury, and that the Court below was in error in directing a verdict for the defendants. But, upon careful examination of the record, we fail to discover any *legally* sufficient proof upon which a verdict for the plaintiff could have been based. There is no sufficient evidence, indeed no evidence at all, of the want of ordinary care and diligence on the part of the defendants in the employment of the foreman or superintendent of the work, or of the other co-laborers with the deceased ; nor is there any evidence whatever of the want of ordinary care and diligence on their part in providing the materials with which to do the work. On the contrary, all the proof, that on the part of the plaintiff as well as that on the part of the defendants, tends clearly to show that the foreman or superintendent having the direction of the work, was a competent and skilful workman, and that there were two others, among those employed on the work, who were skilled as bridge-builders. And having employed a competent and skilful foreman to supervise and direct the work, there was certainly no obligation on the defendants to select other hands more skilled and careful than the deceased himself, for his protection. There is no question as to the sufficiency of the materials furnished for doing the work, or for the making sufficient scaffolding. But the question raised, and made most prominent by the prayers offered by the plaintiff, is, whether there was sufficient structure or scaffolding erected to protect the workmen against accidents while engaged in the work on

the bridge? And another question made is, whether the particular mode adopted for doing the act or piece of work, in the doing of which the accident occurred, was safe and proper in itself, and such as men of ordinary prudence and skill would adopt? Both of these propositions may be considered together.

There is no pretence that either of the defendants was present when the accident occurred, or that either of them gave any special direction as to the manner of doing the particular piece of work in the course of which the accident happened. As has already been stated, there is no doubt or question of the fact, that the immediate and direct cause of the accident was the use of the short plank on the greased rails. The work of moving the segments and putting them in place was in its nature perilous, and required great caution on the part of those engaged in it. The peril, however, was open and obvious to the senses of every one engaged in the work; and while it is clear that there was great want of caution in the use of the plank on the greased rails when engaged in turning the segment, it by no means follows that the defendants are liable for the consequences of that want of care. Ample materials had been provided, and were at hand, with which a proper scaffolding or safe-guard could have been constructed; and it was the duty of those engaged in doing the work to have so used the material for their protection. This precaution was neglected, but it was not the fault of the defendants; it was the neglect of the fellow-servants or co-laborers of the deceased, the risk of whose negligence the deceased assumed, as between himself and the defendants, when he entered the employment. No better illustrations of this could be required than the two closely analogous cases of *Wigmore vs. Jay*, 5 *Exch.*, 352; and *Gallagher vs. Piper*, 16 *C. B.*, (*N. S.*,) 669, before referred to, in both of which cases it was held that because there was no sufficient evidence of personal

negligence on the part of the defendants, therefore they were not liable for the accidents that occurred..

But, according to all the testimony, and the undisputed facts of the case, the deceased directly contributed to his misfortune by his own want of caution for his safety. The danger was open before him, and he was required to use his senses and to exercise his judgment for his protection.   He could not fail to see that there was but a single plank upon which the men could stand, and that the plank rested upon the greased iron rails.   He saw, and knew of course, that there was no scaffolding under him, and that if the plank should slip there was danger of falling to the ground below.   He had, moreover, full knowledge of the *modus operandi* of the moving and putting the segments into place, as he had aided in moving and placing the segments previously adjusted in the arch, when but a single plank was used for the men to stand on while turning the segments to be raised by the derrick.

Now, with this knowledge, and this plainly apparent risk open to the senses of the deceased, upon what principle can the defendants be made liable for the accident that happened to the deceased in consequence of the risk thus knowingly assumed by him?   The principle is perfectly well settled, that an employé who contracts for the performance of hazardous duties, assumes such risks as are incident to their discharge from causes *open and obvious*, the dangerous character of which causes he had an opportunity to ascertain.   And so if a man chooses to accept an employment, *or continue in it*, with the knowledge of the danger, he must abide the consequences, so far as any claim against the employer is concerned.   These propositions are well settled upon authority, and have been expressly approved by this Court, in the case of the *Rail. R. Co. vs. Stricker,* 51 *Md.,* 47; See *Whart on Neg.,* sec. 214 ; *Woodley vs. Railw. Co., L. R.,* 2 *Ex. Div.,* 389,

State, use of Hamelin, *et*ᵉ *al.* *vs.* Malster & Reaney.

cited with approval in *Stricker's Case.* The party know-ing the danger and having assumed the risk, the defend-ants cannot be made liable for not having adopted pre-cautionary measures for his protection.

In the case of *Sullivan vs. India Manf. Co.*, 113 *Mass.*, 396, where a party was injured by being caught in the gearing of a machine near which he was employed, and where the danger was open and apparent, upon a motion for a new trial, after a verdict for the defendant, the Court, in support of the verdict, stated the law applicable to the case thus: "When the employé assents to occupy the place prepared for him, and to incur the dangers to which he will be exposed thereby, having sufficient intelli-gence and knowledge to enable him to comprehend them, it is not a question whether such a place might, with reasonable care, and by reasonable expense, have been made safe. His assent has dispensed with the perform-ance on the part of the master of the duty to make it so. Having consented to serve in the way and manner in which the business was being conducted, he has no ground of complaint, even if reasonable precautions have been neglected."

And in the case of *Sullivan's Adm'r vs. Louisville Bridge Co.*, 9 *Bush.*, 81, after a very full examination of the authorities, the same principle was applied in a very much stronger case for the plaintiff than the present. There the plaintiff's intestate fell from a narrow plank erected over the Ohio River where he and others were engaged in passing stones for the filling a crib used in the construc-tion of a bridge over that river. It appeared that he and others had hesitated before the accident about going on the plank, but being told to do so or go home, he did go on the plank as he was directed, and he fell into the river and was drowned. The Court refused to set aside the verdict for the defendant, upon the ground that the deceased had knowingly taken upon himself the risk of doing the work.

Upon the whole record, we discover nothing that would justify this Court in reversing the rulings of the Court below. There being a legal insufficiency of evidence to be submitted to the jury, the Court properly directed the verdict to be rendered for the defendants. The judgment must, therefore, be affirmed.

As, however, there has been a large amount of matter incorporated in the record unnecessarily, in disregard of the 5th rule regulating appeals, and this by agreement, resulting from a disagreement as to the proper preparation of the bill of exception, we think it right that each party should bear one-half of the cost of printing the transcript of the record in this Court; and we so order.

*Judgment affirmed.*

. (Decided 15th November, 1881.)

ROBINSON and MAGRUDER, J., dissented.