This is an appeal from a judgment of the Baltimore City Court upon a verdict awarding the plaintiff $500 for damages caused by injuries received on the 28th day of June, 1905, through the alleged negligence of the defendant. The single exception was taken to the refusal of the Court, at the close of the plaintiff's testimony, to grant the defendant's prayer instructing the jury that there was no evidence legally sufficient to show that the accident complained of resulted directly from any negligence of the defendant or its agents, and that their verdict must be for the defendant.
The only evidence offered was that of the plaintiff himself, his wife, Mary Belinski, and George Weglewitch, who was assisting him in his work at the time of the accident. The plaintiff was engaged with other laborers in unloading loaded freight cars, and his leg was broken and he was severely injured by the fall of a heavy piece of timber from the car he was about to unload. The accident occurred on Pier No. 8 of the Baltimore Ohio R.R. in the harbor of Baltimore. Two gondola cars loaded with timber were standing on the single track laid upon this pier, and the timber was to be transferred to a vessel moored alongside of the pier, the space between the track and the vessel being about fourteen feet wide. One of these cars was nearly unloaded, when the plaintiff was directed by the man in charge of the force, to superintend the unloading of the other car. The sides of these cars are about four feet high, and the timber in them was piled about four feet above the sides, the pieces being twenty-four feet in length and fourteen inches in diameter, some square, and some round, and were held in place by four standards on each side of the car, seven feet high and four inches square, the ends of which were inserted in iron sockets on the sides of the cars; these standards on the opposite sides of the car were fastened together by wire, and in order to unload the car it was necessary to cut these wires, and remove the standards from the sides of the car. The plaintiff and a fellow-workman, Victor Krauss, began the work as directed by the foreman, who gave *Page 454 
plaintiff no instructions as to how the work should be done, but told him he was the car man, and left the method to him. Krauss cut the wires connecting the standards on the opposite sides of the cars, and the plaintiff removed three of the four standards upon that side of the car next to the vessel. During the removal of these, no work was done in unloading the other car which was ahead of that on which plaintiff was working. The fourth standard was jammed in the socket, and plaintiff and Krauss were unable to pull it out. Plaintiff then asked Krauss for an axe, and with it struck the standard twice between the two iron sockets in which it stood. Upon his examination in chief, he said he wanted "to cut it short and make easy work," and "to unloosen it somewhat in order to take it out;" but upon re-direct examination he said the axe was a fireman's axe with a pick on one side, where the head of an ordinary axe is, so that he could not use that side to dislodge the standard; that the blade side was used to cut iron with, and was dull and blunt; that he did not attempt to chop or cut the standard out, but only to loosen it, and to effect this he struck two upward blows with the dull side of the axe upon the standard, between the two sockets, so as to loosen it, and drive it upwards out of the sockets. While he was engaged in the effort to remove this fourth standard, work was resumed on the other car, and just as he struck the two blows mentioned, eight men who were at work on the other car lifted a heavy timber from it and threw it down upon the pier. The two cars were coupled or connected in some way, and the fall of the timber shook the pier and the car upon which plaintiff was at work, and the timbers resting against the standard he was attempting to loosen, broke that standard in the middle below the top of the car, and one of the heavy timbers fell down from the car, upon the plaintiff and crushed his leg. He testified that the standard was not broken or weakened by the blows from the axe, but by the jarring and pressure of the timbers against it caused by the shaking of the pier from the fall of the timber thrown from the other car at that moment It appeared from the evidence of both the plaintiff and George *Page 455 
Weglewitch that the floor of the pier was not level, and that the railroad track was considerably lower on the side from which the timber fell than on the other side; Weglewitch testified that the difference was seven inches; that Pier 8 was "the oldest pier of the company, and a bad pier, and that there are some new piers," and that this particular car was heavily loaded. Plaintiff testified that he had only worked three nights on Pier No. 8, and knew nothing of the work there, but that he had worked on Pier No. 31 two years, and in the car shops nearly a year; that when he returned from the hospital after his accident he looked at the track, and the low side had been raised on five inch blocks; that he did not know whether there was any purpose in having one side of the track lower than the other, but that this track was in constant use, and there was no chance to repair it. Belinski's wife testified that after his injury she went to Pier 8 to see about his wages, and found the defendant was fixing the track on the pier.
It is too well settled is this State to require citation of authority, that unless there is some prominent and decisive act, in regard to the effect and character of which no room is left for ordinary minds to differ, Courts will not withdraw the case from the consideration of the jury. The prominent fact in this case is the falling from the car of the timber, while at rest, upon a track seven inches lower on that side than the other, and at a moment when the car was shaken by the concussion of falling timber upon the inclined pier. The only question involved under the exception is the negligence of the defendant is not providing a safe place and safe appliances for the performance of plaintiff's work. There was evidence tending to show that the track was in an unsafe condition for the work then being performed, and that the injury happened in consequence; that the defect in the track must have been known to the defendant, and should have been repaired; that the plaintiff was acting in obedience to orders in what he was doing, and that he was ignorant of the source of danger existing at the moment of the accident. A case should never be withdrawn from the jury unless the conclusion follows as *Page 456 
matter of law that no recovery can be had upon any view which can be properly taken of the facts the evidence tends to establish.Gardner v. Mich. Cent. R.R. Co., 150 U.S. 342. No question of the assumption of risk can arise under this evidence. Union Pac.R.R. v. O'Brien, 161 U.S. 456. There was no error in the rejection of the defendant's prayer.
Judgment affirmed with costs to the appellee above and below.