# THE BOOTH PACKING COMPANY, A Body Corporate,

## *vs.*

## FREDERICK GREUNER, An Infant, Through His Father and Next Friend Joseph Greuner.

*Master and servant: duty to servants; safe place to work; cautioning against dangers; children. Packing houses: vats of boiling water. Prayers: segregating facts. Experts: physicians.*

It is error in instructions to the jury to segregate particular facts, to the exclusion of other essential facts, of which there is evidence in the case.                                    p. 396

It is the duty of a master to provide his servants with a reasonably safe place in which to work, and to caution them against any dangers incident to the work which are not open and obvious.                                    p. 396

Where it so clearly appears that the master has fully performed his duty, in every particular, that there is no room for an honest difference about it, the court should direct a verdict for the defendant.                                    p. 396

Where there is a conflict of testimony, or the evidence is of so inconclusive a character that there is room for a fair difference of opinion, the case should be submitted to a jury.     p. 396

The duties owed by a master are all the more strictly enforced when the servant is a child or youth who, by reason of his age or capacity, is less able to appreciate the nature and extent of the danger to which he is exposed.                                    p. 396

Md.]                          Syllabus.

Where a slight child of 14 years was employed in a packing factory where, among other duties, he was told to put buckets of fruit into vats of boiling water, it was: *Held*, that whether or not the employer was negligent in not warning the boy was a question for the jury.                          p. 398

A physician who treated the injured party for six months is well qualified to testify as an expert as to the nature, extent and permanence of the injuries.                          p. 395

*Decided December 13th, 1916.*

Appeal from the Baltimore City Court. (STANTON, J.)

A boy 14 years old was employed for general work about a packing factory; he was set to work placing buckets of fruit in vats of boiling water; he fell in, and was seriously hurt; in a suit brought in his behalf there was a verdict for $1,000 for the plaintiff; from the judgment thereon this appeal was taken.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*German H. H. Emory* (with whom were *Frank, Emory and Beeuwkes* on the brief), for the appellant.

*Emanuel M. Baum* (with whom was *Philip L. Sykes* on the brief), for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

The Booth Packing Company in 1911 was a corporation engaged in the packing of vegetables and fruits. The equitable plaintiff obtained employment with the company in that year, when he was fourteen years old. He was not engaged to do any specific work, his employment being general, nor was any limitation or restriction named as to what he should not do. The first work to which he was assigned was sweeping up about the place.

Some three or four weeks after the plaintiff went to work at the packing house, the accident happened in which the plaintiff was injured, out of which this action arises.

Among the articles packed by the defendant were pears. After being pared these were placed in a tub, from which they were transferred to metal buckets, perforated on the bottom and sides similar to a colander. The buckets were then placed in a vat or tank of hot water which was about four feet from the tub. From the hot tank the buckets of fruit were transferred to a tank of cold water situate on the opposite side of the hot tank from the tub, and at an equal distance. These two tanks were each about twelve feet in length, and had a height from the floor of three feet or three feet two inches. Along the length of each tank, and raised some six or eight inches above the floor ran platforms or gratings built of rough planks, with spaces between the planks for any water which fell on them to drain off.

On the day of the accident the plaintiff was assigned to work on the platform between the tub and the hot tank, where his work consisted in partly filling the buckets with the fruit which had been pared, and placing them in the hot tank, from which they were removed and placed in the cold tank by another employee, whose station was on the grating between the hot and cold tanks. In the bottom of the hot tank for a depth of ten inches was water, heated to or nearly to the boiling point, and between the top of the water and the top of the tank was a space of twelve inches. While performing his work the plaintiff slipped or fell into the tank containing the hot water, from which he was drawn by the workman stationed between the two tanks. The injury which he suffered was a severe scalding of his legs and parts of his body.

The main question is, whether the employer had met the duty required of him by law of providing a safe place for the servant to perform his work, and whether the work was so dangerous in its nature as to impose a duty upon the

master of cautioning or warning the servant, and if so, whether that duty was fulfilled.

The record presents three bills of exception. Of these, the first two were to the admission in evidence of the testimony of a physician as to the probable, permanent effect of the injury to the plaintiff. No error is perceived in these rulings of the Court. The physician had examined the boy and attended him at the time of the accident, and the treatment had continued for over six months, during which he had made sixty-three dressings of the injured parts. Certainly if any one was competent to speak as to the probability of permanent injury it was a physician who had had such opportunities for long continued observation, and the evidence given by him was subsequently given without objection by another physician, Dr. George Heller, so that neither of these exceptions afforded any ground for a reversal of the judgment rendered. *Howard County* v. *Pindell*, 119 Md. 69; *Doyle* v. *Gibson*, 119 Md. 36.

The remaining bill of exception was to the action of the Court in its ruling upon the prayers of the plaintiff, two in number; those of the defendant, twelve in number; and the special exception of the defendant to the granting of the plaintiff's first prayer.

There is no occasion to discuss the second prayer of the plaintiff, which was the customary damage prayer in such cases, or the prayers of the defendant numbered one, two, four, five, seven and eight, all of which were granted, or the prayer of the defendant numbered three, which in slightly different phraseology was fully covered by the prayer numbered five, offered by the defendant and granted by the Court.

Of the remaining prayers, defendant's prayer C sought to take the case from the jury on the ground of contributory negligence; prayer D asked a like instruction upon the theory of the assumption of risk. The defendant's sixth prayer was objectionable for the reason that it segregated certain facts, and asked an instruction in favor of the de-

fendant upon the facts so segregated, which constitutes a vice frequently condemned by this Court. *Whisner* v. *Whisner,* 122 Md. 195; *Dolby* v. *Larrimore,* 121 Md. 618; *Robinson* v. *Silver,* 120 Md. 41; *Goodman* v. *Saperstein,* 115 Md. 678.

This leaves for consideration the ruling of the Court upon the plaintiff's first prayer, and the prayers of the defendant which sought to withdraw the case entirely from the consideration of the jury.

The obligations of the master to provide the servant a safe place in which to work, to give proper instructions as to the method of performing his work, and to caution the servant against any dangers incident to his employment, which are not open and obvious, have been recognized over and over again by the Courts, and nowhere any more distinctly than in this State. For a failure by a master in his duty in regard to any of these he has been held accountable in damages to his servant who might suffer an injury by reason of the master's failure.

These duties owed by the master are all the more strictly enforced when the servant is a child or youth, who by reason of his age or capacity is less able to appreciate the nature and extent of the danger to which he may be exposed, than an older person.

In cases where the master has fully performed his duty in every particular, and this appears so clearly that no two fair-minded persons can differ upon the question, it is the duty of the Court to direct a verdict for the defendant; but where there is a conflict in the testimony, or the evidence is of so inconclusive a character that two persons might fairly differ with regard to it, the case is one proper to be submitted to a jury. *Harvey* v. *B. & O. R. R.,* 69 Md. 339; *Burke* v. *Baltimore,* 127 Md. 554.

It is not deemed essential to multiply citations of authorities for the legal propositions just stated, for they are so well recognized as to be elementary.

The principles stated have always been most strictly applied in the case of children, because of their less experience

and but partially developed capacity to understand and appreciate the dangers which may be incident to the employment. *Levy* v. *Clark,* 90 Md. 146; *Hockaday* v. *Schloer,* 125 Md. 677.

The rules have been most frequently announced in cases where the accident has occurred in connection with the operation of machinery, but they have by no means been limited to such cases. Thus in *Rossiter* v. *Peter Cooper Glue Factory,* 155 App. Div. (N. Y.) 413, the action was by an employee for injuries received from falling into an unguarded vat of boiling material while engaged in stirring the contents with a pole so short that he was obliged to bend over to perform his work. This was held an act of negligence on the part of the master, as not furnishing the servant a proper tool or appliance. In *Craig* v. *Wilkins,* 74 Atl. 872 (N. H.), the accident was caused by the slippery condition of a floor, and the Court held that "notwithstanding it could have been found that the plaintiff ought to have known of the slippery condition of the floor on which he fell, it can not be said that all fair-minded men must come to that conclusion"; and the case was therefore properly submitted to the jury. In *Merrill* v. *Fox,* 219 Mass. 387, the plaintiff had a fall on a slippery floor. In *Hamelin* v. *Malster,* 57 Md. 287, the plaintiff's deceased fell from a bridge which was under construction, on which he was employed as a workman.

In regard to three of the cases to which the Court has been referred an additional word needs to be said:

In the *National Enameling and Stamping Co.* v. *Brady,* 93 Md. 646, the case was left to the jury, but in that case there had been a distinct agreement between the master and the mother of the infant plaintiff, that the boy should not be put to work at any machine, and the injury happened at a stamping machine, a distinct breach of the contract of employment.

In *Hettchen* v. *Chipman,* 87 Md. 729, there was an employment for a distinct purpose, and though injured while other-

wise engaged, the plaintiff was not without experience at a machine substantially similar to the one upon which the accident to him happened, and the plaintiff himself testified that he knew precisely what were the risks of the work he was doing.

In *McGee* v. *Cuyler,* 112 Md. 314, the plaintiff, a boy of fourteen, who had been fully instructed by the master in the use of the machine on which he was placed at work, and the platform, the slipping of which was the immediate occasion of the injury, had been placed where it was contrary to the express instructions of the master, no dereliction of duty was chargeable to the employer, and the case was therefore properly taken from the consideration of the jury.

The important facts in the present case are few. That the plaintiff received no precise instructions as to the way his work should be done is clear; whether he was warned of the danger attendant on his work is not so clear. The plaintiff himself testifies that he was not, and the foreman of the defendant testifies that the work was not dangerous. If the work was not dangerous there was of course no occasion to warn the plaintiff. Of course if the plaintiff had the capacity to understand the nature of the danger, the element of the assumption of risk could be invoked, but the extent of this capacity was a question for the jury upon the evidence and with the benefit of having the plaintiff before them. The plaintiff of course knew that boiling water would scald, but it does not follow from this that he realized the full extent of the danger to which he might be exposed. It must always be borne in mind that the duty of the employer is relative and conditional, not unvarying and absolute, and that what will be a full discharge of the duty in one case, will not be in another.

The plaintiff in this case was a boy of fourteen, not particularly large or vigorous; the duty he was assigned to perform involved the lifting from a tub of a bucket partly full of fruit, weighing between twenty and twenty-five pounds,

across a rack or platform four feet in width, which might at times be slippery from being wet, and placing it in a vat of hot water, the edge of the tank containing which was about at the line of his waist. In such a state of facts the language used by JUDGE PEARCE of this Court in *B. & O. R. R. Co. v. Belinski,* 67 Atl. 249 (106 Md. 452), is strikingly applicable: "A case should not be withdrawn from the jury, unless the conclusion follows as matter of law that no recovery can be had upon any view which can properly be taken of the facts the evidence tends to establish."

With regard to the prayer asking the withdrawal of the case on the ground of contributory negligence, it is sufficient to say, as was said in *Strawbridge v. Bradford,* 128 Penna. 200: "A boy's capacity is the measure of his responsibility and if he has not the ability to foresee and avoid the danger to which he may be exposed, negligence will not be imputed to him if he unwittingly exposes himself to it."

Finding no reversible error in the action of the trial Court the judgment appealed from will be affirmed.

*Judgment affirmed, with costs.*